[No. 45047. En Banc. June 1, 1978.]

IRENE PRUTZMAN, *Respondent*, v. RONALD ARMSTRONG, ET AL, *Defendants*, WASHINGTON INSURANCE GUARANTY ASSOCIATION, *Appellant*.

*Ausum, Bassett & Gemson,* by *R. L. Gemson,* for appellant.

*Welts & Welts,* by *David A. Welts,* for respondent.

UTTER, J.—The trial court, in a tort declaratory judgment action, ruled in favor of the respondent, Irene Prutzman, holding that she could accept a settlement offer of $12,600 from her insurer, Safeco, with whom she had uninsured motorist coverage for $15,000 and that she could also recover the difference between that settlement and $15,000 from the appellant, Washington Insurance Guaranty Association (WIGA).[1] We reverse and hold that under the facts of this case respondent has no right of recovery against the WIGA.

Respondent was injured in an automobile accident in 1972. She then sued defendant Armstrong, who is not involved in this appeal. Armstrong had insurance with a $15,000 per person maximum through the Medallion Insurance Company. The lawsuit was set for trial on September 22, 1975, but no trial was held on that date as the parties had reached a settlement agreement. On September 22, notification of the insolvency of the Medallion Insurance Company was sent to the parties. After receiving notice of this insolvency in receivership, the parties nonetheless proceeded to submit a stipulated judgment to the superior court on October 1, 1975. The court entered judgment on

---

[1]The WIGA is an association formed pursuant to RCW 48.32, Washington's version of the Model Insurance Guaranty Association Act. Its function is to fulfill the obligations of insolvent insurers under certain conditions as specified in the statute.

that date for $15,000 against Armstrong for personal injuries and an additional award for property damage and costs.

In June of 1976, respondent instituted a declaratory action naming Safeco and the appellant WIGA as third-party defendants. Safeco was the insurance carrier for respondent under which she had uninsured motorist coverage with a $15,000 limit. The declaratory complaint requested a judgment declaring Safeco's liability for the full $15,000 provided for in the uninsured motorist provision of the policy between respondent and Safeco, or in the alternative a decision that respondent could accept Safeco's offer of settlement of $11,600 and retain entitlement to the difference between that amount and $15,000 from WIGA. Safeco eventually offered $12,600 in settlement and the trial court ruled that respondent could accept this settlement offer and retain her rights against the WIGA. The court entered judgment for the difference between $12,600 and the $15,000 coverage less $100 deductible as provided for by the act. We reverse the judgment against the WIGA.

There are two issues presented on appeal: whether the WIGA is bound by the stipulated judgment entered against defendant Armstrong and his insolvent insurer Medallion, and whether respondent is entitled to a recovery from WIGA despite her settlement with her insurer for less than the maximum amount of her policy limits.

I

█ The answer to whether the WIGA is bound by the stipulated judgment entered against defendant Armstrong and Medallion is found in the language of the statutes. RCW 48.32.160 provides: "All proceedings in which the insolvent insurer is a party or is obligated to defend a party in any court in this state shall be stayed for one hundred eighty days and such additional time thereafter as may be fixed by the court from the date the insolvency is determined to permit proper defense by the association of all pending causes of action." This statute precludes giving

effect to the judgment signed after notice of insolvency. The purpose of the statute is to provide the WIGA with an opportunity to become a party to a suit in which it may bear ultimate responsibility, to investigate the plaintiff's claims, and to settle or defend as necessary. This purpose was thwarted and the role of the WIGA as defined in RCW 48.32 was extinguished—except as a passive source of funds—by the judgment in this case. If the function of the WIGA is to retain its intended scope and vitality, then the stay provisions of RCW 48.32.160 must be enforceable in favor of the WIGA. Under the mandate of that statute, we hold that the judgment entered during the statutory stay period was of no effect.

## II

■ The second question—whether respondent is entitled to proceed against the WIGA after her settlement with her insurer for less than the maximum amount of her policy limits—is more difficult. The function of the WIGA is to step into the shoes of an insolvent insurer to protect residents of the state affected by the insolvency, as declared in RCW 48.32.010: "The purpose of this chapter is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . ." The WIGA is not designed to augment the insurance recovery which an injured party is entitled to receive; it merely replaces insurance coverage properly procured but lost through the insurer's insolvency.

Appellant's claim would appear to meet the definition of a covered claim, RCW 48.32.030(4).[2] To obtain compensation from the WIGA, however, a party must first comply

---

[2] "(4) 'Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after the first day of April, 1971 and (a) the claimant or insured is a resident of this state at the time of the insured event; or (b) the property from which the claim arises is permanently located in this state." RCW 48.32.030(4).

with RCW 48.32.100(1), which requires that "[a]ny person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this chapter shall be reduced by the amount of such recovery under the claimant's insurance policy."

This exhaustion provision is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists. Respondent did not comply with the exhaustion requirement. Her settlement for less than the $15,000 policy limit is inadequate to constitute exhaustion under the statute. Any other interpretation would furnish no incentive for plaintiffs to seek an adequate settlement from their own insurer because they could always force the WIGA to pay the difference between the settlement and the actual value of their claim.

In addition, even absent the settlement issue, respondent could obtain no recovery from the WIGA under these facts. Her uninsured motorist coverage limit is identical to the policy limits of the insurance policy held by the original defendant with Medallion. Respondent must seek the full value of her claim up to $15,000 from her own insurer. The WIGA's maximum liability under the Medallion policy is $15,000, minus the amount of any recovery from respondent's own insurer. Thus, because the Medallion policy limit did not exceed respondent's coverage under her own insurance policy, respondent may look only to her own insurance company for recovery. She may not receive greater insurance recovery than she could have received if Medallion had not suffered bankruptcy. Accordingly, unless the insolvent insurer's policy limit exceeds the plaintiff's uninsured motorist policy limit under that plaintiff's own insurance policy, the WIGA cannot be held responsible for any portion of the plaintiff's damages.

The judgment is reversed.

WRIGHT, C.J., and ROSELLINI, STAFFORD, BRACHTENBACH, HOROWITZ, DOLLIVER, and HICKS, JJ., concur.