## White v. Accardo

610

*Frederick B. Smith,* for plaintiff.
*Eugene A. Spector,* for defendants.

CHALFIN, *J.,* January 7, 1980—

## STATEMENT OF THE CASE

Defendants, Salvatore and Arlene Accardo, bring this motion for summary judgment against plaintiff, James F. White. There being no disputed issues of fact relevant to the instant motion, the matter is ripe for the court's determination.

Plaintiff instituted an action against the Accardos for injuries allegedly sustained by plaintiff in a motor vehicle accident occurring on November 3, 1971 when the motorcycle operated by plaintiff collided with an automobile operated by defendant Arlene Accardo and owned by defendant Salvatore Accardo.[1] At the time of the accident the Accardos

---

1. The Accardos brought in the additional defendant City of Philadelphia, alleging that it negligently maintained the traffic control devices at the scene of the accident.

were insured by Gateway Insurance Company (Gateway) while plaintiff was insured by Safeguard Mutual Insurance Company (Safeguard) which provided plaintiff with uninsured motorist coverage. The $10,000 per-insured-person policy limit of plaintiff's uninsured motorist coverage was the same as the coverage limit of the Accardos' liability policy.

Subsequent to the accident, the Accardos' insurer, Gateway, became insolvent resulting in its suspension and dissolution by the Pennsylvania Insurance Commission. Pursuant to The Pennsylvania Insurance Guaranty Association Act of November 25, 1970, P.L. 716, sec. 101 et seq., 40 P.S. §1701.101 et seq., (act), the Pennsylvania Insurance Guaranty Association (PIGA) became, in effect, the substituted insurer of the Accardos. As mandated by the act, the liability coverage provided by PIGA is the same as that provided by Gateway prior to its insolvency.[2] As their insurer, PIGA undertook the representation of the Accardos in this action.

During the pendency of the instant suit, plaintiff filed claims against both PIGA and his uninsured motorist carrier, Safeguard, to recover for his losses occasioned by the accident on November 3, 1971. Plaintiff instituted an arbitration proceeding on his claim against Safeguard pursuant to the uninsured motorist provision of his policy. Plaintiff terminated the arbitration proceeding by settling his claim against Safeguard in the amount of $1,380. Plaintiff now seeks to pursue the instant suit against the Accardos who, plaintiff asserts, are liable for the amount of damages awarded him in this

2. 40 P.S. §1701.201(b)(1)(i).

action less the $1,380 recovered from Safeguard. PIGA, plaintiff asserts, must satisfy any such adjusted award against the Accardos up to the $10,000 coverage limit formerly provided by Gateway.

The Accardos argue that plaintiff's settlement of his claim against his uninsured motorist carrier for an amount less than the $10,000 coverage limit constitutes a failure to exhaust his right of recovery against his insurer as required by the act. The consequence, defendants argue, must be the barring of plaintiff from further recovery against the Accardos and PIGA.

## ISSUES

The questions presented are twofold:

(1) does plaintiff's settlement with his uninsured motorist carrier for an amount less than the $10,000 policy limit constitute a failure by plaintiff to exhaust his insurance rights as required by The Pennsylvania Insurance Guaranty Association Act; and

(2) if so, does such settlement bar plaintiff from further recovery against the Accardos and PIGA.

For the following reasons, both questions must be answered in the affirmative.

## DISCUSSION

The resolution of the novel issues presented turns on an application of the "Non-duplication of recovery" or "exhaustion" provision of the act, 40 P.S. §1701.503, interpreted in light of the policies and purposes underlying the act. One of the stated purposes of the act, 40 P.S. §1701.102(1), is ". . . to avoid financial loss to claimants or policyholders as

a result of the insolvency of an insurer. ٤ . ." to effectuate this goal, the act created PIGA to, inter alia, step into the shoes of an insolvent insurer to the extent of the coverage originally provided by the insolvent insurer, with certain limitations.[3] Thus any claims one otherwise would have against an insurer before it became insolvent must be presented to PIGA.

Prior to calling on the PIGA to pay any claim under a policy issued by an insolvent insurer, a claimant, such as plaintiff, must first exhaust his rights under all other insurance policies which cover any part of his claim. After exhausting his rights the claimant may then call upon PIGA to compensate him for those losses which are covered under the policy issued by the insolvent insurer less any amounts recovered from other insurance carriers. This scheme is clearly set out in 40 P.S. §1701.503(a) captioned "Non-duplication of recovery":

"(a) Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim, shall first be required to exhaust his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy."

Plaintiff contends that PIGA must honor claims up to the policy limits so long as the claims do not exceed the actual losses for which he has not been fully compensated after exhausting his insurance

---

3. PIGA coverage is limited to claims in excess of $100 and less than $300,000: 40 P.S. §1701.201(b)(1)(i).

rights. This contention runs contrary to the legislative intent underlying the act which is to put a claimant in the same financial position he would have been in had the insurer not become insolvent. Had Gateway remained solvent, plaintiff could not have asserted a claim against his carrier for uninsured motorist benefits since the Accardos became "uninsured motorists" only by virtue of a legislative classification defining them as such upon the insolvency of Gateway: 40 P.S. §2000(b). An uninsured motorist carrier has no subrogation rights against insureds of insolvent carriers such as the Accardos: 40 P.S. §2000(d). Clearly, the act was not intended to supply claimants with an additional or alternative source of funds in the event of an insurer's insolvency, but is designed to provide excess coverage only. Thus a claimant is entitled to recover from PIGA an amount no greater than the limits of coverage provided by the insolvent insurer's policy, less the amount recovered by the claimant in exhausting his rights under other insurance policies. See Lucas v. Illinois Ins. Guaranty Fund, 52 Ill. App. 3d 237, 367 N.E. 2d 469 (1977) (same holding construing nearly identical exhaustion provision in Illinois Guaranty Act).

Since plaintiff had a rightful claim under his own uninsured motorist policy with Safeguard for his losses emanating from his accident, the act required him to exhaust his rights under this policy before pursuing his claims against PIGA. Although he had a $10,000 policy limit on his uninsured motorist coverage, he elected to settle his claim with Safeguard for only $1,380 rather than to seek an arbitration award with respect to his claim. Defendants contend that such a settlement for less than the policy limits constitutes a failure to ex-

haust rights to insurance proceeds within the meaning of section 503 of the act. This failure, they contend, bars plaintiff from seeking additional recovery from PIGA and therefore must also bar recovery from defendants. We agree with the position taken by defendants.

Foregoing an arbitration award by agreeing to a settlement of arbitrable insurance claims for less than the policy limits does not constitute "exhaustion" of a right to insurance proceeds within the meaning of section 503 of the act. The act makes available a source of funds for payment to claimants of insurers which later become insolvent, but only to the extent that the claimant has no other source of insurance proceeds from which to recover for his losses. It does not provide a claimant with an alternative source of proceeds equal to the insolvent insurer's coverage limits less whatever amounts he may have unilaterally agreed to accept in settlement of claims under other insurance policies. To hold that such a settlement of a claim constitutes an "exhaustion" of insurance rights would encourage collusive settlements and totally destroy the legislative scheme by making available to a claimant an "alternative" source of funds rather than an "excess" source as intended.

Although no reported Pennsylvania case authority exists dealing with the issues involved in the case at bar, several appellate courts in other states have spoken on the issues involved. Insofar as the act is a uniform law promulgated by the National Association of Insurance Commissioners and adopted by most states, the judicial construction given to such uniform legislation by the courts of other states must be considered so as to effect the general purpose to make uniform the legislation of

the enacting states: Statutory Construction Act of 1972, 1 Pa.C.S.A. §1927; PIGA v. Leonard, 72 D. & C. 2d 532 (1975). The related cases from other jurisdictions also point to the conclusion that settlement of an insurance policy claim for an amount less than the policy limits does not constitute an "exhaustion" of the claimant's rights against an insurer.

In Prutzman v. Armstrong, 90 Wash. 2d 118, 579 P. 2d 359 (1978), plaintiff recovered a judgment of $15,000 against defendants for injuries sustained in a motor vehicle accident. Defendants' carrier became insolvent, whereupon the Washington Insurance Guaranty Association (WIGA) became defendants' substituted insurer pursuant to the uniform Insurance Guaranty Act enacted by the Washington legislature. After obtaining the judgment, plaintiff filed a claim against his uninsured motorist carrier to recover for the losses he sustained. Plaintiff settled this claim prior to arbitration for $12,600 and then sought to recover the balance of the $15,000 judgment from WIGA. Construing Washington's analogous "exhaustion" provision of the uniform act, the Court en banc held in 90 Wash. 2d at 122, 579 P. 2d at 362:

"This exhaustion provision is apparently designed to limit WIGA liability to situations in which no other source of recovery for damages exists. . . . Her *settlement for less than the $15,000 policy limit is inadequate to constitute exhaustion under the statute.* Any other interpretation would furnish no incentive for plaintiffs to seek an adequate settlement from their own insurer because they could always force the WIGA to pay the difference between the settlement and the actual value of their claim." (Emphasis supplied.)

See also Spearman v. State Sec. Ins. Co., 57 Ill. App. 3d 393, 372 N.E. 2d 1008 (1978) (mere filing of uninsured motorist claim followed by carrier's disclaimer of coverage does not amount to "exhaustion"; the claim must proceed to arbitration).

The next question to be decided is whether plaintiff is also barred from recovering a judgment against the Accardos, the named defendants in this action, given PIGA's release from all financial responsibility to plaintiff as a result of plaintiff's failure to exhaust his policy rights. We hold that plaintiff is barred from any recovery in this action against the Accardos. Any other holding would render the "exhaustion" provision of the act a practical nullity.

If the Accardos were now subject to liability, they would be left without a source of insurance protection should plaintiff recover a judgment against them in excess of the $1,380 plaintiff accepted from Safeguard. To expose defendants to the possibility of such a financial loss would defeat a stated purpose of the act, 40 P.S. §1701.102(1), which is to "avoid financial loss to . . . policyholders as a result of the insolvency of an insurer. . . ." Protection of defendants from financial loss can only be accomplished by barring plaintiff's right of recovery against them.[4]

The cases cited by plaintiff to support his contention that he has a right to alternative sources of recovery are inapposite since none involved the "exhaustion" requirement of the act. Harleysville Mutual Casualty Company v. Blumling, 429 Pa.

4. No issue has been raised as to defendants' liability for any of plaintiff's losses exceeding their $10,000 policy limit. Since plaintiff has not asserted herein a claim for losses in any such amount, we need not consider the issue.

389, 241 A. 2d 112 (1968), dealt with a claimant's right to recover under uninsured motorist provisions of two separate policies. The court allowed recovery under the second policy despite an "other insurance" clause in that policy but only after the plaintiff had recovered the *full amount* of the policy limits on the first policy. Likewise inapposite is De Santis v. American Mutual Liability Insurance Company, 53 D. & C. 2d 595 (1971), appeal dismissed, 219 Pa. Superior Ct. 770, 281 A. 2d 349 (1971), which involved the extent of the uninsured motorist carrier's right to subrogation of moneys recovered by the claimant from the tortfeasor where the plaintiff had received the full limits under the policy and then recovered in excess of those limits from the tortfeasor. Nor does Goins v. Shiner, 119 Pitts. L.J. 170 (1971), support plaintiff since if the exhaustion requirement had been applicable in that case it would have been met by plaintiff who awaited an arbitration award prior to pursuing his action against the tortfeasor-defendant.

We decline to adopt the prophylactic rule suggested by defendants limiting the amount of coverage provided by PIGA to the amount of coverage provided by the insolvent insurer's policy exceeding the amount of coverage provided by the uninsured motorist carrier. If such a rule were adopted, PIGA would never provide coverage where a claimant has uninsured motorist coverage equal to or in excess of the coverage provided by the insolvent insurer. Certainly, if this had been the intent of the legislature, it would have been expressly mandated. The act provides only that any amount payable by PIGA shall be reduced by the amount of any "recovery" by a claimant under any other policy, not by the amount of "coverage" provided by

any other policy: 40 P.S. §1701.503(a). We limit our holding to the determination that plaintiff's settlement with his uninsured motorist carrier for an amount less than the limits of coverage under his policy bars his right to recover from defendants, Salvatore and Arlene Accardo, for any amount within the limits of plaintiff's coverage.

For the above reasons we granted defendants' motion for summary judgment.