No. 62,593

Mary B. Hetzel, *Appellant,* v. Charles T. Clarkin, *Appellee.*
(772 P.2d 800)

Opinion filed April 14, 1989.

*Orlin L. Wagner*, of Law Offices of Orlin L. Wagner, of Wichita, argued the cause, and *James R. Howell*, of the same firm, was with him on the briefs for appellant.

*Craig Kennedy*, of Kassebaum & Johnson, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case presents a first impression review of the Kansas Insurance Guaranty Association Act (the Guaranty Act), K.S.A. 40-2901 *et seq.* The context of our initial interpretation involves the relationship of uninsured motorist coverage held by a plaintiff asserting a personal injury claim against a defendant whose insurance carrier is insolvent.

Plaintiff Mary Hetzel appeals from the trial court's dismissal with prejudice of her damage action against defendant Charles Clarkin. Hetzel's claim arose out of injuries she sustained in an automobile accident in Wichita, Kansas. Clarkin's insurance carrier was insolvent.

The following questions are presented for resolution. (1) Did Hetzel exhaust her rights under her uninsured motorist coverage? (2) If she did not exhaust her rights, is the Kansas Insurance Guaranty Association (Guaranty Association) insulated from *any* liability? (3) Was there sufficient evidence for the trial court to find that Hetzel had not exhausted her rights under her uninsured motorist coverage? (4) Is Hetzel entitled to costs, attorney fees, and expenses on appeal?

We do not agree with the trial court's interpretation of the Guaranty Act; consequently, we reverse and remand for further proceedings.

## FACTS

Mary Hetzel was a passenger in one of the automobiles involved in the accident. Hetzel alleged that she sustained severe and disabling injuries and that the accident was solely the fault of Clarkin, who ran a red light.

In addition to naming Clarkin as a defendant, Hetzel sued her insurance carrier, Farmers Insurance Company, Inc., (Farmers) alleging in her petition:

"That Farmers Insurance Company, Inc. is made a party under the provisions of K.S.A. 40-284, *et seq.*, commonly referred to as the uninsured and underinsured motorist coverage law for the reason that the defendant, Charles T. Clarkin, at all material times was insured by Iowa National Mutual Insurance Company which is now in liquidation. That Farmers Insurance Company, Inc. is the U.M. insurer for plaintiff."

Farmers responded, asserting that if it was found to have legal liability to its insured its liability was limited to $30,000, the policy limit of Hetzel's uninsured motorist coverage. Farmers paid the medical expense Personal Injury Protection (PIP) policy limit of $5,000. Hetzel settled with Farmers under her uninsured motorist coverage for an additional $25,000. The trial court dismissed Hetzel's claim as to defendant Farmers with prejudice.

Clarkin, the remaining defendant, moved to dismiss Hetzel's claim. Clarkin argued that Hetzel had failed to exhaust her rights under the uninsured motorist provisions of her policy as required by K.S.A. 40-2910 of the Guaranty Act. Clarkin reasons that Hetzel settled with Farmers for $25,000, $5,000 less than the Farmer's policy limit of $30,000.

Hetzel contends that Clarkin's motion to dismiss was premature. Hetzel argues that it was not appropriate to determine if the limits of her policy had been exhausted until the court had tried the issues of negligence and damages.

The trial court based the dismissal with prejudice of Hetzel's damage claim against Clarkin upon its analysis of the language of the Guaranty Act, and effectively closed the courtroom door to Hetzel.

### 1. <u>Exhaustion of Rights</u>

The Guaranty Act, K.S.A. 40-2901 *et seq.*, was created:

"to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. This act shall be liberally construed to effect such purpose which shall constitute an aid and guide to interpretation." K.S.A. 40-2901.

The Guaranty Act sets up a fund to cover claims against insolvent insurance companies which arise prior to determination of insolvency or within thirty days after determination of insolvency. K.S.A. 40-2906(a)(1). Hetzel filed a timely notice of

her claim against Clarkin's insurer upon learning that the insurer was insolvent. The dispute in this appeal arises out of differing interpretations of the language of the Guaranty Act. K.S.A. 40-2910(a) states:

"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim shall be required *to exhaust first his right under such policy*. Any amount payable on a covered claim under this act shall be reduced by the amount of *any recovery* under such insurance policy." (Emphasis added.)

K.S.A. 1988 Supp. 40-284 requires that uninsured and underinsured motorist coverage must be offered with every automobile liability policy unless the insured named in the policy rejects the coverage in writing. Hetzel had uninsured motorist coverage.

An insured motor vehicle is considered to be an uninsured motor vehicle where the insurer of the vehicle is insolvent. K.S.A. 40-285. A statutory blending of K.S.A. 40-2910(a), 40-284, and 40-285 requires an auto accident plaintiff asserting a claim against a defendant whose insurer is insolvent to first assert a claim under his or her own uninsured motorist policy provisions.

The Guaranty Act was adopted in 1970. It is based on a Post-Assessment Property & Liability Insurance Guaranty Model Act proposed by the National Association of Insurance Commissioners. Senate Bill 440, which later became K.S.A. 40-2901 *et seq.*, was introduced by the Senate Committee on Commercial and Financial Institutions. The section of S.B. 440 later to become K.S.A. 40-2910 was noted in the January 27, 1970, minutes of that committee: "The intent of this section is to prohibit duplication of recovery by a claimant because of the existence of this association—identical to the N.A.I.C. proposals."

Clarkin's vehicle was insured for a maximum policy limit of $50,000 by Iowa National Mutual Insurance Company, which had been declared insolvent. Pursuant to K.S.A. 40-2906(a)(1), the Guaranty Association is responsible for claims up to the face value of the policy. Hetzel claimed $750,000 in damages as the result of Clarkin's negligence. The Guaranty Association was not joined as a defendant in this action, although Hetzel did give the Guaranty Association notice of her claim.

At the hearing before the trial court on the motion to dismiss, Clarkin's attorney said, "My representation in behalf of Mr.

Clarkin is under the Kansas Insurance Guaranty Association that provides a defense." He argued that, because Hetzel had settled with Farmers for $25,000 when her uninsured motorist limit was allegedly $30,000, she had not exhausted her uninsured motorist benefits as required by K.S.A. 40-2910 and, therefore, her action against Clarkin should be dismissed. The trial court was convinced. We are not.

Neither this court nor the Kansas Court of Appeals has defined what constitutes exhaustion of rights under K.S.A. 40-2910(a). The last sentence of K.S.A. 40-2910(a) makes it clear that the Guaranty Association is only liable for the difference between the plaintiff's recovery from his or her own insurer and the limits of the defendant's policy issued by the insolvent insurer. For example, if Hetzel recovered the $30,000 uninsured motorist policy limit from Farmers, the Guaranty Association is only liable for an additional $20,000 (the difference between $30,000 and the $50,000 limit on Clarkin's original policy).

The "exhaustion question" has been addressed in several other jurisdictions. In many states the corresponding statute under judicial review is identical to K.S.A. 40-2910. The individual state legislatures drafted statutes based on the recommendations of the National Association of Insurance Commissioners. Despite the fact that the wording is identical in many of the "nonduplication of recovery" provisions, differing judicial interpretations have emerged.

The Louisiana Supreme Court in *Hickerson v. Protective Nat. Ins. Co.*, 383 So. 2d 377 (La. 1980), reviewed the issue. La. Rev. Stat. Ann. § 22:1386(1) (West 1978) is identical to K.S.A. 40-2910(a). In *Hickerson,* the Supreme Court of Louisiana said:

"The stated purpose of the act is to avoid financial loss to both claimants and policyholders, and that purpose is thwarted by requiring an injured party to proceed first against his or her own insurer. The policyholder with an insolvent insurer is not protected at all. The purpose of the 'Nonduplication' provision was to prevent double recovery. It was designed to apply to ordinary insurance coverage and not to uninsured motorist coverage, which is required by public policy. [Citations omitted.] Any other interpretation would render LIGA's function meaningless since an injured claimant would in all cases have to proceed first against his own insurer under the uninsured coverage mandated in Louisiana. The policyholders of the insolvent insurer would then be cast in judgment for the reimbursement claim of the uninsured carriers. No one would be protected except the Louisiana Insurance Guaranty Association [LIGA], which has

statutory immunity from subrogation claims in LSA-R.S. 22:1379(3)." 383 So. 2d at 379.

*Hickerson* held that the LIGA was responsible for all the obligations of the insolvent insurer and that the plaintiff could recover from the LIGA without resort to her uninsured motorist policy, just as she could have recovered had the defendant's insurance carrier not been insolvent. See *Billeaudeau v. Lemoine*, 386 So. 2d 1359 (La. 1980).

Louisiana appears to be the only reported jurisdiction which has not allowed the state guaranty insurance association credit for sums recovered from the plaintiff's own insurance. Hetzel encourages us to adopt the Louisiana view. We are not persuaded by her suggestion.

K.S.A. 40-285 includes vehicles which are insured by insolvent companies within the definition of uninsured motor vehicles. The Louisiana Supreme Court's analysis in *Hickerson*, that uninsured motorist coverage was not contemplated in the "non-duplication" provision of its Guaranty Act, is not applicable to Kansas.

In *Lucas v. Illinois Ins. Guaranty Fund*, 52 Ill. App. 3d 237, 367 N.E.2d 469 (1977), Lucas obtained a $390,000 judgment against the defendant, whose insurance liability limit was only $20,000. The defendant's insurer subsequently became insolvent. Lucas recovered $10,000 from her own insurer, which was the policy limit on the uninsured motorist provision of her policy. Lucas contended that the $10,000 recovered from her insurer was a collateral source and should not diminish the damages she was entitled to recover from the Illinois Insurance Guaranty Fund. The Appellate Court of Illinois disagreed, stating:

"The statutory purpose is to place claimants in the same position that they would have been in if the liability insurer had not become insolvent. (Ill. Rev. Stat. 1975, ch. 73, par. 1065.82.) The Act states that the Fund is intended to protect claimants against financial loss because of the insolvency of insurance companies. The difference between the amount of the insolvent insurer's policy limits and the amount paid to claimant by his own insurer is made up by the Fund. To permit a greater recovery than would have occurred had the insurance company remained solvent would both extend the Act beyond its purpose and offend public policy by giving the Act an interpretation which results in a windfall judgment." 52 Ill. App. 3d at 239.

Although the Illinois statute is not identical to the Kansas statute,

it is substantially similar. We agree with the Illinois statement of statutory purpose.

In *King v. Jordan,* 601 P.2d 273 (Alaska 1979), Jordan sued King for injuries she received when her car was rear-ended by King's car. King was insured for $15,000, but while the trial was pending, King's insurance carrier was declared insolvent. Jordan settled with her own insurer for $12,500 under the uninsured motorist provision. King conceded liability, and a nonjury trial on the issue of damages was held in which the judge awarded Jordan $9,547.94. The trial judge ruled that this award should not be offset by the money Jordan recovered from her own insurer. The Alaska nonduplication of recovery statute is identical to K.S.A. 40-2910(a). The Supreme Court of Alaska held that this statute embodies a legislative abrogation of the collateral source rule where the guaranty fund is liable for damages. 601 P.2d at 278. The court found that, although the fund would be liable for the judgment against King as a result of the insolvency of his insurer, because Jordan had already recovered from her own insurer in excess of the amount of the judgment, the fund was relieved of liability.

Clarkin, in the case at bar, cites *Prutzman v. Armstrong,* 90 Wash. 2d 118, 579 P.2d 359 (1978). In *Prutzman,* the trial court had entered a judgment against Armstrong for $15,000. Armstrong's insurance carrier was insolvent. Prutzman brought a declaratory judgment action against her uninsured motorist carrier and the Washington Insurance Guaranty Association (WIGA). The policy limits on both Armstrong's liability insurance and Prutzman's uninsured motorist insurance were $15,000. Prutzman settled with her insurance company for $12,600 and the trial court entered judgment against WIGA for the difference between the $12,600 and $15,000. The Supreme Court of Washington reversed, finding that the plaintiff did not comply with the exhaustion provision when she settled with her insurer for less than the policy limits. In addition, the court said:

"[E]ven absent the settlement issue, respondent could obtain no recovery from the WIGA under these facts. Her uninsured motorist coverage limit is identical to the policy limits of the insurance policy held by the original defendant with Medallion. Respondent must seek the full value of her claim up to $15,000 from her own insurer. . . . Accordingly, unless the insolvent insurer's policy limit exceeds the plaintiff's uninsured motorist policy limit under that plaintiff's own insurance policy, the WIGA cannot be held responsible for any portion of the plaintiff's damages." 90 Wash. 2d at 122.

The instant fact situation differs from *Prutzman* in that: (1) defendant Clarkin's policy limits with Iowa National Mutual Insurance Company exceeded Hetzel's uninsured motorist policy limits with Farmers; and (2) Hetzel claims damages in excess of the limits of both policies.

In *Watts v. Department of State,* 394 Mich. 350, 231 N.W.2d 43 (1975), the Wattses' insurance company settled with Mr. Watts for $5,000 and Mrs. Watts for $7,500. The Wattses then obtained a judgment against the tortfeasor in the amount of $15,000 for Mr. Watts and $16,000 for Mrs. Watts. The Motor Vehicle Accident Claims Fund contended that it was liable only for the excess of each of those amounts over the $10,000 per person policy limit on the Wattses' uninsured motorist policy.

The Supreme Court of Michigan disagreed, finding that the fund was liable for any amount in excess of the amount paid by the uninsured motorist carrier. The fund argued that such a construction of the statute would lead to collusive settlements between plaintiffs and their uninsured motorist carriers. The court answered that the fund could attack settlements that it felt were improper by showing collusion or fraud. The court held "that where a good-faith settlement is negotiated, whether with the tortfeasor [citation omitted] or the injured person's own insurer (this case), the statute does not require that policy limits be fully collected or credited to the fund." 394 Mich. at 357. We decline to adopt the Michigan "good faith rule." Allowing a plaintiff to recover the difference between her "good-faith" settlement with her own insurer and the limits of the Guaranty Association's liability may lead to collusive settlements between the injured plaintiff and the plaintiff's uninsured motorist insurer. It may also lead to excessive litigation on the issue of whether such settlements were made in good faith.

The stated purpose of the Kansas Guaranty Act is to avoid financial loss to claimants and policyholders because of the insolvency of insurance companies. K.S.A. 40-2901. The nonduplication provision was adopted to avoid windfall recoveries. The result in Hetzel's case, at the trial court level, does not carry out the legislative intent of the Kansas Guaranty Act. Here, regardless of whether Hetzel's actual policy limits under her policy were $35,000 ($30,000 uninsured motorist plus $5,000 PIP

benefits), or \$30,000 (\$25,000 uninsured motorist plus \$5,000 PIP benefits), or \$25,000 (\$25,000 uninsured motorist coverage with no contractual relationship under the policy language between PIP and uninsured motorist coverage), the Guaranty Association was liable for the excess of whatever her uninsured motorist coverage limit was up to \$50,000, the limits of Clarkin's policy.

The Guaranty Act was designed to put claimants and policyholders in the same position in which they would have been had the policyholders' insurance company remained solvent. Here, if Clarkin's insurer had remained solvent, Hetzel could have proceeded to trial. If she had secured a judgment against Clarkin of at least \$50,000, she could have collected \$50,000 from Clarkin's carrier as payment from Clarkin on the judgment.

Even if Hetzel's settlement with her insurance company was \$5,000 short of the policy limit, she should still be able to collect the excess coverage that the Guaranty Association had a duty to provide (\$50,000 less the maximum she could have recovered from her uninsured coverage).

The trial court's interpretation of K.S.A. 40-2910(a) barring Hetzel from proceeding against Clarkin or the Guaranty Association because she may have settled for less than the policy limits of her Farmers uninsured motorist insurance does not comply with the purpose of the Guaranty Act.

Legislative intent requires that, to recover damages under the Kansas Insurance Guaranty Association Act, K.S.A. 40-2901 *et seq.*, the plaintiff collect as much as she or he can from her or his first-party carrier under the policy provisions for uninsured motorist coverage. The plaintiff can collect from the Kansas Insurance Guaranty Association under K.S.A. 40-2906 only the amount that the Association's liability exceeds the limits of the plaintiff's uninsured motorist coverage, to the extent supported by the plaintiff's judgment and the defendant's coverage. A plaintiff shall be assumed to have received the policy limits of his or her uninsured motorist coverage. Consequently, a plaintiff who makes a claim on his or her own uninsured motorist policy will have exhausted his or her rights under K.S.A. 40-2910 regardless of the amount actually received from his or her uninsured motorist carrier. The amount available for recovery from the Guaranty Association shall be the difference between the policy

limits of the plaintiff's uninsured motorist coverage and the Guaranty Association's liability limits even if the amount the plaintiff actually receives from his or her uninsured motorist carrier is less than the limits.

We adopt this interpretation as the rule for Kansas. Under the Kansas rule, unless the parties effect a settlement, it will be necessary for the issues of negligence and damages to be litigated in cases where the Guaranty Association's liability exceeds the limits of the plaintiff's uninsured motorist coverage.

The trial court's dismissal of Hetzel's action was premature.

Clarkin relies on *White v. Accardo,* 15 Pa. D. & C. 3d 609, *appeal dismissed* (1980) (a Pennsylvania trial court ruling on a motion for summary judgment).

No issue was raised in *White* as to the Pennsylvania Insurance Guaranty Association's liability for plaintiffs' losses exceeding their $10,000 uninsured motorist policy limit. *White* did not address the factual situation present in the instant action. *White* is distinguished from the instant case. No determination of Hetzel's damages had been made. Hetzel has alleged damages of $750,000. In addition, there is a dispute as to: (1) whether her insurance carrier, Farmers, had paid out the policy limits of her uninsured motorist coverage, and (2) what the limits were.

The Guaranty Association's liability was limited to $50,000, based on the terms of Clarkin's policy with the insolvent insurance carrier. Since Hetzel's uninsured motorist limit was either $30,000 or $25,000, the Association's potential liability was $20,000 or $25,000. A determination of Hetzel's damages was required in order to make a determination that the Guaranty Association was not liable.

In the case at bar, a pretrial conference order set out the following:

"As a result of said collision, plaintiff claims damages as follows: $750,000.00 and medical expenses to date; pain and suffering to date; future pain and suffering; future medical, surgical and hospitalization; and temporary and permanent disability."

The issues were stated to be:

"A. The negligence, if any, on the part of the defendant, Charles Clarkin.
"B. The negligence, if any, on the part of Gordon Deering.
"C. The nature and extent of the injuries and damages sustained by the plaintiff.
"D. Whether the plaintiff failed to mitigate her damages."

The pretrial order does not mention the Guaranty Association or

its potential liability in the case. "A trial court has no jurisdiction to hear issues which are not raised by the pleadings or defined at pretrial conference, except new issues raised by evidence to which there is no objection. [Citations omitted.]" *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, 200, 563 P.2d 467 (1977). Hetzel's attorney strenuously objected to raising the issue of the Guaranty Association's liability, and to the admission of evidence of Hetzel's settlement with her insurer.

Hetzel contends that she did exhaust her remedies because, if added together, the PIP payment of $5,000 and the $25,000 settlement equal the limit on her uninsured motorist policy. K.S.A. 1988 Supp. 40-284(e)(6) allows insurers to limit the coverage under the uninsured motorist provision to the extent that PIP benefits have been paid. Hetzel did not produce a copy of her policy at the hearing on the motion to dismiss. Her insurance policy is not included in the record on appeal. We cannot determine what the uninsured motorist limits of Hetzel's policy are. We leave that determination for the parties and the trial court on remand.

The only evidence as to the policy limits on the Farmers uninsured motorist policy arose from the verbal assertions of defense counsel and Farmers' answer, which stated that Farmers' liability was limited to $30,000. Farmers did not indicate if the $30,000 limit included the $5,000 PIP payments.

2. Costs, Expenses, and Attorney Fees

Hetzel, in oral argument, reasserts the claim for costs, expenses, and attorney fees advanced in her brief. She contends Clarkin's trial court motion to dismiss was frivolous.

Hetzel relies on Supreme Court Rule 7.07(b) (1988 Kan. Ct. R. Annot. 35). She is the appellant and the rule is not applicable to the party appealing. *Stang v. Caragianis*, 243 Kan. 249, 261, 757 P.2d 279 (1988).

Reversed and remanded.