COLORADO INSURANCE GUARANTY ASSOCIATION, a non-profit unincorporated legal entity, Petitioner,

v.

Mable E. HARRIS, Forrest E. Guthrie, and Nick Keseloff, Respondents.

No. 91SC343.

Supreme Court of Colorado,
En Banc.

April 6, 1992.

Anstine and Hill, Ronald C. Hill, Jeffrey J. Richards, Denver, for petitioner.

Davis W. Moore, Jr., Denver, for respondent Mable E. Harris.

Zupkus & Ayd, P.C., Patricia M. Ayd, Tod E. Fitzke, Denver, for respondents Forrest E. Guthrie and Nick Keseloff.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to consider the court of appeals opinion in *Colorado Insurance Guaranty Association v. Harris*, 815 P.2d 983 (Colo.App.1991), concluding that Mable E. Harris (Harris) had exhausted her rights, as required under section 10–4–512(1), 4A C.R.S. (1987), by settling her uninsured motorist claim for less than the full amount of the policy coverage, and thus could assert a claim against the Colorado Insurance Guaranty Association (CIGA). The court also concluded that the amount available for recovery from the CIGA is the difference between the policy limits of the uninsured motorist coverage and the CIGA's statutory liability limits.[1] We affirm.

I.

On May 23, 1985, a motor vehicle owned by Nick Keseloff (Keseloff) and driven by Forrest Guthrie (Guthrie), Keseloff's employee, collided with a motor vehicle operated by Harris. On August 15, 1986, Harris filed suit against Keseloff and Guthrie, alleging personal injuries sustained as a result of the automobile accident.

At the time of the accident, Keseloff and Guthrie were insured by a $300,000 automobile liability policy issued by Great Global Assurance Company (Global). Subsequent to the date of the accident, Global became insolvent. The Colorado State In-

1. We also granted certiorari to consider whether the CIGA was subject to the $100,000 liability limit in section 10–4–508(1)(a), 4A C.R.S. (1991 Supp.), or the pre–1988–amendment $50,000 liability limit, § 10–4–508(1)(a), 4A C.R.S. (1987). Both the district court and the court of appeals used the $100,000 liability limit. The district court's use of the $100,000 limit was neither contested in the district court nor raised on appeal to the court of appeals. Accordingly, the issue of whether the CIGA has a potential liability of $100,000 or $50,000 in this case is not properly before this court.

surance Commissioner referred Harris' claim to the CIGA, pursuant to section 10–4–510, 4A C.R.S. (1987).

The CIGA is a nonprofit unincorporated legal entity created by the Colorado Insurance Guaranty Association Act, §§ 10–4–501 to –520, 4A C.R.S. (1987) (the Act), which provides a mechanism for the payment of claims against insolvent insurers. Section 10–4–508(1)(a), 4A C.R.S. (1991 Supp.), provides that the CIGA shall "[b]e obligated to the extent of the covered claims existing prior to a determination of insolvency ... [and] such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars and is less than one hundred thousand dollars."

The Act requires claimants, like Harris, to first pursue any claim they have against their own insurer before seeking recovery from the CIGA. Section 10–4–512(1), 4A C.R.S. (1987), provides:

> **Nonduplication of recovery.** (1) *Any person having a claim against his insurer under any provision in his insurance policy which is also a covered claim shall be required to exhaust first his right under such policy.* Any amount payable on a covered claim under this part 5 shall be reduced by the amount of such recovery under the claimant's insurance policy.

(Emphasis added.)

Harris' automobile insurance policy contained an uninsured motorist provision which provided coverage in the amount of $25,000. Pursuant to section 10–4–512(1), Harris filed a claim against her own automobile insurance policy for the full amount of the uninsured motorist coverage. Following negotiations with her insurance carrier, and upon the advice of counsel, Harris accepted $22,500 as full settlement of her uninsured motorist claim. After payment of attorney fees, the $22,500 settlement was more than Harris would have

received had she litigated the uninsured motorist claim, received a judgment for the full $25,000, and paid the attorney's fees for litigating this claim.

On May 17, 1988, the CIGA filed a declaratory judgment action seeking a determination of its obligations to Harris, Keseloff, and Guthrie under the Act. The CIGA argued that by accepting an amount less than the coverage limits of her uninsured motorist policy, Harris failed to exhaust her rights under the uninsured motorist policy as required by the nonduplication of recovery provision of the Act, section 10–4–512(1), and thereby waived any right to recover from the CIGA. Harris argued that she did exhaust her rights and that settlement of her uninsured motorist claim for a sum less than the policy limits did not preclude her from asserting a claim against the CIGA, Keseloff, and Guthrie.

The district court, relying on *Hetzel v. Clarkin*, 244 Kan. 698, 772 P.2d 800 (1989), held that Harris satisfied the exhaustion requirements in section 10–4–512(1), and was not precluded from asserting a claim against the CIGA, Keseloff, and Guthrie. The district court also held that Harris shall be assumed to have received the $25,000 policy limit of her uninsured motorist coverage and that the amount available for recovery from the CIGA was the difference between the $25,000 policy limit and the CIGA's $100,000 liability limit.[2]

The court of appeals affirmed the district court's decision. The court of appeals reviewed the approaches adopted in other jurisdictions interpreting nonduplication provisions as applied in cases where claimants settled for less than the full amount of the uninsured motorist coverage. The court of appeals adopted the *Hetzel* approach as being most consistent with the public policy of Colorado. Like the district court, the court of appeals concluded that Harris exhausted the policy limit of her

**2.** The district court also entered a judgment in favor of Guthrie and Keseloff that the CIGA was obligated to defend them.

uninsured motorist coverage and could assert a claim against the CIGA to recover the difference between the uninsured motorist coverage limit and the CIGA's liability limit.

We granted certiorari to determine whether the court of appeals erred in holding that Harris exhausted her rights under her uninsured motorist policy, as required by section 10–4–512(1), and thus was entitled to assert a claim against the CIGA.

## II.

The CIGA contends that the nonduplication of recovery provision, section 10–4–512(1), 4A C.R.S. (1987), provides that before Harris can assert a claim against the CIGA, she must first exhaust her rights under her uninsured motorist policy. They contend that by settling for less than the policy limits of her uninsured motorist policy, Harris did not satisfy the exhaustion requirement in section 10–4–512(1) and therefore was not entitled to assert a claim against the CIGA. We disagree.

### A.

The nonduplication of recovery provision requires a person "to exhaust first his [or her] right" under his or her own insurance policy. § 10–4–512(1). Other jurisdictions interpreting nonduplication of recovery provisions which contain identical language to the Colorado act have attached different meanings to this provision under circumstances similar to the present case. *See Hetzel v. Clarkin,* 244 Kan. 698, 772 P.2d 800 (1989) (settlement for less than policy limits does not preclude action against guaranty association); *Watts v. Michigan Dep't of State,* 394 Mich. 350, 231 N.W.2d 43 (1975) (settlement for less than policy limits does not preclude further action against guaranty association, if settled in good faith); *Prutzman v. Armstrong,* 90 Wash.2d 118, 579 P.2d 359 (1978) (settlement for less than policy limits precludes further action against guaranty association). As these cases indicate, the language in section 10–4–512(1) is reasonably susceptible to more than one meaning. In

determining which approach the General Assembly adopted in section 10–4–512(1), we look to the legislative purposes enumerated in the statute and the legislative intent underlying the statute. *See Danielson v. Castle Meadows, Inc.,* 791 P.2d 1106, 1111 (Colo.1990) (where a statute is reasonably susceptible to more than one meaning, the court must construe the statute according to the legislative intent underlying the statute).

The General Assembly has declared that the purpose of the Act is to "provide a mechanism for the payment of covered claims under certain insurance policies, [and] to avoid excessive delay in payment and financial loss to claimants or policyholders because of the insolvency of an insurer." § 10–4–502, 4A C.R.S. (1987). In construing the Act, the General Assembly has instructed that the Act "shall be liberally construed to effect the purposes enumerated in section 10–4–502, which section shall constitute an aid and guide to interpretation." § 10–4–505, 4A C.R.S. (1987). Further, the General Assembly enacted the nonduplication of recovery provision to avoid windfall or duplicate recoveries. *See* § 10–4–512(1); *Hetzel,* 772 P.2d at 805; *California Ins. Guar. Ass'n v. Liemsakul,* 193 Cal.App.3d 433, 238 Cal.Rptr. 346, 349 (Cal.2d Dist.Ct.App.1987).

### B.

The court of appeals adopted the Kansas Supreme Court's decision in *Hetzel v. Clarkin,* 244 Kan. 698, 772 P.2d 800 (1989), as being consistent with Colorado's public policy. In *Hetzel,* the trial court dismissed Hetzel's claim against the Kansas Guaranty Fund, concluding that Hetzel, by settling under her uninsured motorist claim for less than the full amount, failed to exhaust her rights under her uninsured motorist coverage as required by the Kansas Guaranty Act. The Kansas Guaranty Act contained an exhaustion of rights provision which was essentially identical to the nonduplica-

tion of recovery provision in the Colorado act. *Compare id.* 772 P.2d at 802 *with* § 10–4–512(1). The trial court stated that the purpose of the Kansas Guaranty Act was "to avoid financial loss to claimants and policyholders because of the insolvency of insurance companies," to avoid windfall recoveries, and to put claimants and policyholders in the position they would have been had the policyholder's insurance company remained solvent. *Hetzel,* 772 P.2d at 805.

After reviewing judicial interpretations from other jurisdictions, the Kansas Supreme Court concluded that the trial court's interpretation did not comply with the purposes of the Guaranty Act. *Id.* at 806. The court held that Hetzel had exhausted her rights under the nonduplication provision and that, even though Hetzel settled for less than her policy limits, she could still collect "the excess coverage that the Guaranty Association had a duty to provide," which was the difference between the Guaranty Act liability limits and the policy limit of her uninsured motorist coverage. *Id.* at 805–06.

The Colorado Act provides a mechanism for the payment of claims against an insured whose insurer becomes insolvent. §§ 10–4–502, –503. The Act's stated purpose in such circumstances is to avoid excessive delay in payment and financial loss to claimants and policyholders. § 10–4–502. In order to effectuate these purposes, we conclude, like the *Hetzel* court, that Harris' settlement exhausts her rights under the uninsured motorist policy and that she may bring a claim to recover the difference between the policy limit of her uninsured motorist coverage and the statutory liability limit of the Act. A contrary conclusion would not fulfill the purposes of the Act. Requiring a claimant to recover the full amount of the uninsured motorist coverage could result in excessive delay in payments because the claimant, in many cases, would be required to litigate his or her uninsured motorist claim in order to recover the full amount so as to satisfy the exhaustion requirement. A contrary conclusion could also result in financial loss to both claimants and policyholders because they would incur the costs for which the insolvent company would be liable if it had remained solvent. In enacting the CIGA, the General Assembly intended to protect the public and did not intend to hinder or foreclose its recovery.

Allowing Harris to recover from the CIGA, subject to a reduction by the policy limit of her uninsured motorist coverage, avoids windfall recoveries and duplicate recoveries by Harris against the CIGA. This approach also places on the claimant the burden of maximizing his or her uninsured motorist recovery. To relieve a claimant of this burden would serve as a potential windfall to the uninsured motorist insurer who could avoid the full amount of their liability by negotiating a one-sided settlement with the disinterested claimant.

In addition to effectuating the purposes and intent of the Act, the approach we adopt today is consistent with the public and judicial policies of Colorado. Because Harris could recover more by settling for $22,500 than by arbitrating or litigating her uninsured motorist claim and receiving the full amount, Harris settled with her uninsured motorist insurer and avoided litigation on that claim. The public and judicial policies in Colorado favor the settlement of such disputes. *See Davis v. Flatiron Materials Co.,* 182 Colo. 65, 71, 511 P.2d 28, 32 (1973).

### C.

The CIGA argues that we should follow the approach adopted in *Prutzman v. Armstrong,* 90 Wash.2d 118, 579 P.2d 359 (1978), and other cases, in which the court held that a claimant who settled her claim for less than the full amount of the uninsured motorist policy had not exhausted her rights as required by the nonduplication of recovery provision, section 10–4–

512(1). As stated above, this approach conflicts with the purposes of the Act. Also, this approach would discourage settlement of uninsured motorist claims because a person would have to recover the full amount of that policy in order to file a claim against the CIGA. As stated above, public policy favors the settlement of such disputes.[3]

We affirm.

**3.** As stated in Part II.A., some jurisdictions have adopted a third approach. Under this approach, settlement of a suit for less than the full amount of the uninsured motorist policy satisfies the exhaustion requirements in the nonduplication provision as long as the settlement was executed in good faith. *See Watts v. Michigan Dep't of State,* 394 Mich. 350, 231 N.W.2d 43 (1975). If the settlement was executed in good faith, the claimant is allowed to recover the difference between the settlement amount and the liability limits of the Guaranty Fund. We reject this approach because it will allow for collusive settlements and excessive litigation, and may result in the CIGA subsidizing the uninsured motorist insurer by requiring the CIGA to pay the difference between the settlement amount and the uninsured motorist policy limit.