No. 69,777

KANSAS DEPARTMENT OF HEALTH AND ENVIRONMENT, *Appellant*,
v. KANSAS INSURANCE GUARANTY ASSOCIATION, *Appellee*.

(869 P.2d 692)

Opinion filed March 4, 1994.

*Thomas M. Franklin*, of Polsinelli, White, Vardeman & Shalton, P.C., of Kansas City, Missouri, argued the cause, and *Timothy J. Sear*, of the same firm, of Overland Park was with him on the briefs for appellant.

*Stuart Messer*, of Glenn, Cornish, Hanson & Karns, Chartered, of Topeka, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MCFARLAND, J.: This is a declaratory judgment action to determine if the Kansas Insurance Guaranty Association (KIGA) is entitled to recover $300,000 it had previously paid the Kansas Department of Health and Environment (KDHE). The district court entered summary judgment in favor of KIGA. KDHE appeals therefrom.

There is no contention that (1) a declaratory judgment action is an inappropriate vehicle for the resolution of the controversy between the parties or (2) the case was not ripe for the entry of summary judgment. KDHE contends summary judgment should have been entered in its favor rather than in favor of KIGA.

The undisputed facts may be summarized as follows. As a condition of engaging in the business of surface mining coal from a 312-acre tract located near Ft. Scott, Bill's Coal Company, Inc., (Bill's Coal) was required to have a reclamation permit issued by KDHE's predecessor, the Mined-Land Conservation and Reclamation Board (Mined-Land Board). As a condition for the issuance of the permit (No. BB-T-HR-204), Bill's Coal was required to obtain a $1,500,000 surety bond to guarantee performance of the reclamation obligations placed upon Bill's Coal by the permit. Bill's Coal secured the surety bond from Allied Fidelity Insurance Company (Allied Fidelity) on September 28, 1984 (Bond No. 078562). The Treasurer of the State of Kansas was the sole obligee upon default. Allied Fidelity, as a condition of issuing the bond, required Bill's Coal to obtain an $805,000 irrevocable letter of credit from Continental Illinois National Bank and Trust Company of Chicago (Continental), with Allied Fidelity being the named beneficiary (Letter of Credit No. 6359793).

The dominos started falling on December 10, 1985, when Bill's Coal filed for bankruptcy. The Mined-Land Board conducted an administrative hearing and, on June 23, 1986, forfeited the reclamation permit and surety bond of Bill's Coal. No appeal was taken from that order.

Demand was made upon Allied Fidelity to pay the $1,500,000. Allied Fidelity then made demand upon Continental for $805,000 under its letter of credit. Continental issued a draft in said amount on July 8, 1986. On July 15, 1986, by order issued by an Indiana

circuit court, insurance liquidation was ordered against Allied Fidelity.

Under Letter of Credit No. 6359793, the conditions on Allied Fidelity drawing the $805,000 were that Allied Fidelity hold the money separately and use it only to satisfy liabilities under Bond No. 078562. Letter of Credit No. 6359793 states:

"2) Any funds drawn under this Letter of Credit shall be held apart by you for the express purpose of reimbursing any incurred liabilities of the aforementioned bond(s) or undertaking(s).

"3) Should funds drawn not be used by you for the satisfaction of or reimbursement of any loss, cost, claim for expense of any nature whatsoever incurred by you, (including unpaid premiums), on any such bond(s) or undertaking(s) as aforesaid, such amount shall be returned directly to Continental Illinois National Bank and Trust Company of Chicago, Chicago, Illinois, quoting: (a) Letter of Credit # 6359793 and (b) Bill's Coal Company, Inc., as the account party."

After much litigation, the draft was paid. The proceeds were segregated and held apart in accordance with the terms of the letter of credit.

Meanwhile, KDHE filed a claim with KIGA. In November 1987, KIGA paid the statutory maximum of $300,000 to KDHE. KIGA and KDHE agreed to settle the Allied Fidelity claim for $1,150,000. Allied Fidelity paid out $977,657.75 ($805,000 principal plus interest). KIGA and KDHE agreed that said proceeds should be placed in escrow until a judicial determination could be made as to whether KIGA was entitled to recovery of the $300,000 from said proceeds.

This action was duly commenced to make that determination. The facts were essentially undisputed. KDHE and KIGA each sought the entry of summary judgment in its favor. The district court held in favor of KIGA, and KDHE appeals therefrom.

Since July 1, 1988, KDHE has had the task of administering the Mined-Land Conservation and Reclamation Act (K.S.A. 49-401 et seq.) Under the Act, KDHE has jurisdiction and authority to regulate the reclamation of lands affected by surface mining operations in order to encourage the productive use of such lands (K.S.A. 1993 Supp. 49-402a[a]). The permit issued to Bill's Coal under the Act required a $1,500,000 surety bond. The bond was forfeited in 1986. KDHE's claim under the forfeited bond was $1,500,000. There is no contention that KDHE's damage or loss

is less than the full amount of the bond. All funds received by KDHE as a result of the bond forfeiture will be used by it to reclaim the lands involved in the surface mining operation of Bill's Coal.

The insolvency of the insurance company issuing the bond (Allied Fidelity) brought the Kansas Insurance Guaranty Association Act (K.S.A. 40-2901 *et seq.*) onto the scene. The Act is administered by KIGA (K.S.A. 40-2904). The purpose of the Act is stated in K.S.A. 40-2901 to be as follows:

"The purpose of this act is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. This act shall be liberally construed to effect such purpose which shall constitute an aid and guide to interpretation."

Upon a determination of insolvency, K.S.A. 40-2906 provides KIGA shall:

"(1) Be obligated to the extent of the covered claims existing prior to the determination of insolvency and arising within thirty (30) days after the determination of insolvency, or before the policy expiration date if less than thirty (30) days after the determination, or before the insured replaces the policy or causes its cancellation, if such insured does so within thirty (30) days of the determination, but such obligation shall include only that amount of each covered claim which is more than one hundred dollars ($100) and less than three hundred thousand dollars ($300,000), except that the association shall pay the full amount of any covered claim arising out of a workmen's compensation policy. In no event shall the association be obligated to the policyholder or claimant in an amount in excess of the face amount of the policy from which the claim arises.

"(2) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent."

K.S.A. 40-2903(c) defines "covered claim" as follows:

" 'Covered claim' means an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this act applies issued by an insurer, if such insurer becomes an insolvent insurer after the effective date of this act and (1) the claimant or insured is a resident of this state at the time of the insured event; or (2) the property from which the claim arises is permanently located in this state. 'Covered claim' shall not include

any amount due any reinsurer, insurer, insurance pool or underwriting association, as subrogation recoveries or otherwise."

The district court's rationale for entering summary judgment in favor of KIGA is stated as follows:

"K.S.A. 40-2906 provides that KIGA is 'obligated to the extent of the covered claims existing prior to the determination of insolvency.' Since the amount of the bond was more than ·$300,000.00, the covered claim was $300,000.00 and the Act did not afford the plaintiff protection for any amount greater than $300,000.00 in the event of the insolvency of Allied. The protection is the same whether the bond is $300,000.00 or $1,500,000.00. Stated another way, where the bond and the claim exceed $300,000.00, only the first $300,000.00 is protected by the Act, all of which was paid when the Allied insolvency estate paid the plaintiff $805,000.00 plus interest."

KIGA contends that the district court was correct in this determination. We do not agree.

KIGA's maximum liability is $300,000. KIGA agrees that KDHE had a claim against Allied Fidelity for $1,500,000. It concedes that if the letter of credit payment of $805,000 had been received by KDHE prior to resolution of KDHE's claim under KIGA, then KIGA would have paid the $300,000 and would not now be seeking the return of the money. Its rationale is that the claim against the insolvent insurance company would have been reduced to $695,000, of which the first $300,000 would have been a covered claim. KIGA then contends that inasmuch as KIGA paid $300,000 on a claim of $1,500,000, representing the first $300,000 of the claim, K.S.A. 40-2906 mandates the return to KIGA of its $300,000 upon receipt by KDHE of the $805,000.

In *Hetzel v. Clarkin*, 244 Kan. 698, Syl. ¶ 1, 772 P.2d 800 (1989), we discussed the Kansas Insurance Guaranty Association Act and held:

"The stated purpose of the Kansas Insurance Guaranty Association Act, K.S.A. 40-2901 *et seq.*, is to ·avoid financial loss to claimants and policyholders because of the insolvency of insurance companies. The Kansas Insurance Guaranty Association Act was designed to put claimants and policyholders in the same position in which they would have been had the policyholders' insurance company remained solvent."

As *Hetzel* involved a claim of less than $300,000, it was unnecessary to add a caveat "subject, however, to the statutory maximum payout of $300,000." It is undisputed that KDHE had a

"covered claim" of $1,500,000 against Allied Fidelity. Given the purposes of the Act, it would be illogical to conclude that where, as here, all payments from all sources are less than the amount of the claim against the insolvent insurer, KIGA is relieved of responsibility under the Act. Such would not be the liberal construction of the Act mandated by K.S.A. 40-2901 to avoid financial loss to claimants. A partial payment of a claim by an insolvent insurer should not alter KIGA's liability where the aggregate of the insurer's partial payment of the claim and KIGA's maximum statutory liability still leaves the claimant with a shortfall on its claim. KIGA was fully aware of the letter of credit prior to making its $300,000 payment to KDHE. Payment by KIGA of the $300,000 prior to receipt of the letter of credit proceeds should not, under the circumstances herein, relieve KIGA of its statutory liability to the claimant injured by the insurance company's insolvency.

As an alternative argument, KIGA contends that K.S.A. 40-2910(a) gives it a right to recover $300,000 from the funds received from Allied Fidelity. K.S.A. 40-2910(a) provides:

"Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer which is also a covered claim shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this act shall be reduced by the amount of any recovery under such insurance policy."

The statute is clearly inapplicable. The letter of credit required by Allied Fidelity for issuance of its surety bond is not "an insurance policy other than a policy of an insolvent insurer." Additionally, as held in *Hetzel v. Clarkin*, 244 Kan. 698, Syl. ¶ 2:

"K.S.A. 40-2910, the nonduplication provision of the Kansas Insurance Guaranty Association Act, was adopted to avoid windfall recoveries."

There is no windfall recovery herein as the aggregate of all payments received on the claim is less than the amount of the claim.

Over 40 states including Kansas have adopted insurance guaranty acts substantially similar to the National Association of Insurance Commissioners Model Bill. See 19A Appleman, Insurance Law and Practice § 10801, p. 365 n.2 (1982). Although the Kansas Act is infrequently before Kansas appellate courts, similar acts have been litigated in sister states. Liberal construction has been

applied to these acts in various factual contexts to prevent or reduce losses to claimants of insolvent insurance companies. See *Property & Cas. Ins. Guar. F. v. Herder*, 156 Ariz. 203, 751 P.2d 519 (1988); *Connecticut Ins. Guaranty Assn. v. Union Carbide Corporation*, 217 Conn. 371, 585 A.2d 1216 (1991); *Aztec v. Prop. & Cas. Guar. Ass'n*, 115 N.M. 475, 853 P.2d 726 (1993); and *WIGA v. McKinstry Company*, 56 Wash. App. 545, 784 P.2d 190 *cert. denied* 114 Wash. 2d 1017 (1990).

The judgment is reversed and the case is remanded for entry of judgment in favor of the Kansas Department of Health and Environment.