926 P.2d 102 (1995)
Bill BARR, Lenhard Johnson, Robert Corkle, Ed Crawley, Ken Thaxton, Harold Kelloff, John Shuster, Dale Duncan, and George Pennington, Plaintiffs-Appellants,
v.
COLORADO INSURANCE GUARANTY ASSOCIATION AND WESTERN GUARANTY FUND SERVICES, a Colorado corporation, Defendants-Appellees.
No. 94CA0615.
Colorado Court of Appeals, Div. I.
December 21, 1995.
Rehearing Denied April 25, 1996.
Certiorari Denied November 4, 1996.
*103 Frank & Finger, P.C., Hal B. Warren, Evergreen, for Plaintiffs-Appellants.
White and Steele, P.C., Sandra L. Spencer, Denver, for Defendants-Appellees.
Opinion by Judge METZGER.
Plaintiffs, Bill Barr, Lenhard Johnson, Robert Corkle, Ed Crawley, Ken Thaxton, Harold Kelloff, John Shuster, Dale Duncan, and George Pennington, appeal the summary judgment entered in favor of defendants, Colorado Insurance Guaranty Association (CIGA) and Western Guaranty Fund Services (Western). We affirm.
Plaintiffs were 9 of the 15 directors and/or officers of Associated Grocers of Colorado, Inc. (AG), a cooperative association of member grocery stores. In 1983, plaintiffs, in their capacities as directors and/or officers, approved a loan for $5,440,000 for the purchase of grocery stores, without first researching the borrower's background. The borrower defaulted on the loan, causing AG to file for bankruptcy in 1986. On July 29, 1987, the official unsecured creditors' committee of AG was authorized to bring claims and causes of action on behalf of AG against the plaintiffs for the losses that arose from the loan.
Plaintiffs were insured as directors and/or officers under a liability policy with Midland Insurance Company (Midland). After the loan was made, Midland was declared insolvent and was placed in liquidation.
Plaintiffs and the other directors and officers were sued for gross and willful negligence and for breach of fiduciary duty. The suit was settled before trial for $371,000, and plaintiffs apportioned their liability.
Thereafter, each plaintiff made a claim to CIGA to recover his individual loss. CIGA denied plaintiffs' claims and plaintiffs filed suit. Upon cross-motions for summary judgment, the trial court ruled that plaintiffs' claims were one "covered claim" pursuant to the Colorado Insurance Guaranty Association Act (Act), § 10-4-503(4), C.R.S. (1994 Repl. Vol. 4A), obligating CIGA to pay only the statutory limit of $50,000 for the one "covered claim."
Plaintiffs argue that the trial court erred in ruling that, collectively, they had one "covered claim" pursuant to the Act. They assert that each is entitled to recover the statutory limit per "covered claim" from CIGA. We disagree.
CIGA is a nonprofit, unincorporated legal entity created by § 10-4-501, et seq., C.R.S. (1994 Repl.Vol. 4A), which provides a mechanism for the payment of claims against an *104 insolvent insurer and which aims to place claimants and policyholders in the position they would have been in had the insurance company remained solvent. Colorado Insurance Guaranty Ass'n v. Harris, 827 P.2d 1139 (Colo.1992).
Section 10-4-503(4), C.R.S. (1994 Repl.Vol. 4A) defines "covered claim" as: "an unpaid claim ... which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy ... issued by an insurer if such insurer becomes an insolvent insurer...." As applicable here, § 10-4-508(1)(a), C.R.S. (1994 Repl.Vol. 4A) obligated CIGA only to the amount of each covered claim in excess of $100 and less than $50,000.
Thus, subject to the statutory limits, CIGA steps into the shoes of Midland as to claims within the coverage and limits of its insurance policy. Accordingly, a "covered claim" is a claim that should have been paid by the insurer pursuant to the policy but for the insurer's insolvency. Fontenot v. Haight, 764 P.2d 378 (Colo.App.1988).
Therefore, we must examine the terms of the insurance policy to determine CIGA's liability. Midland agreed: "(A) to pay on behalf of the Directors and/or Officers Loss arising from any claim or claims made against the Directors and/or Officers, jointly or severally ... by reason of any Wrongful Act done ... by the Directors and/or Officers; and/or (B) to pay to or on behalf of the Company loss arising from any claim or claims made against the Directors and/or Officers, jointly or severally, during the Policy Period by reason of any Wrongful Act done...." The policy provided a $5 million limit of coverage for each policy year.
The policy defined "Loss" as "any amount a Director and/or Officer is obligated to pay for any claim or claims made against him in respect to his legal liability ... for a Wrongful Act.... `Wrongful Act' means any actual or alleged breach of duty, neglect or error by... the Directors and/or Officers in their respective capacities as Directors and/or Officers."
The Limit and Retention section of the policy stated: "Losses arising out of the same Wrongful Act by one or more of the Directors and/or Officers or interrelated Wrongful Acts by one or more of the Directors and/or Officers shall be considered a single Loss."
In construing a contract of insurance, the words used in the policy must be accorded their plain and ordinary meaning. Federal Deposit Insurance Corp. v. Bowen, 865 P.2d 868 (Colo.App.1993). The policy's provisions cannot be read in isolation, but must be considered as a whole. Simon v. Shelter General Insurance Co., 842 P.2d 236 (Colo.1992).
Because the Limit and Retention section of the policy clearly states that a single loss results from "Losses arising out of the same Wrongful Act ... or interrelated Wrongful Acts" by one or more plaintiffs, it needs no interpretation. The policy limits Midland's liability by aggregating losses for claims against plaintiffs, if their collective conduct results in the wrongful act. See Ryder Truck Rental, Inc. v. Guaranty National Insurance Co., 770 P.2d 1380 (Colo. App.1989)(An insurer who seeks to restrict coverage must clearly express the limitation).
Here, the wrongful act complained of was plaintiffs' decision to loan approximately $5 million without first checking the background of the borrower or the value of the collateral. Since plaintiffs' action, as the Board of Directors, to approve the loan was made in concert, they are deemed to have committed the same wrongful act. Thus, pursuant to the policy terms, any loss is a "single loss."
As a result of the settlement, Midland would be obligated to pay $320,325. This loss constitutes the unpaid "covered claim" under § 10-4-503(4). Consequently, because CIGA steps into the shoes of Midland, CIGA is responsible for paying the "covered claim" up to the $50,000 statutory limit.
Relying on cases from other jurisdictions, plaintiffs argue that the beneficent purposes of the Act warrant the conclusion that each of them has a covered claim. We are not persuaded.
Whatever the law may be in other states, we are required to look to the language of *105 the insurance policy to determine CIGA's obligations. Fontenot v. Haight, supra. The policy here is clear and unambiguous in providing that losses arising out of the same wrongful act shall be considered to be a single loss. Therefore, since there was a single act, there was only a single loss, and there can be only a single covered claim.
In light of this disposition, we need not address plaintiffs' remaining contentions of error.
The judgment is affirmed.
PLANK and TAUBMAN, JJ., concur.