**Katherine C. PINKHAM**

v.

**Daniel W. MORRILL and Bangor and Aroostook Railroad Company.**

Supreme Judicial Court of Maine.

Argued Sept. 8, 1992.
Decided March 16, 1993.

Christopher C. Taintor (orally), James D. Poliquin (orally), Norman, Hanson & De-Troy, Portland, for plaintiff.

John D. McKay, David C. Webb (orally), Eaton, Peabody, Bradford & Vlague, Bangor, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, COLLINS and RUDMAN, JJ.

COLLINS, Justice.

New Hampshire Insurance Company (NHIC), proceeding in the name of Katherine C. Pinkham, its insured, pursuant to M.R.Civ.P. 17(c),[1] appeals from the decision of the Superior Court (Penobscot County, *Kravchuk, J.*) granting a summary judgment in favor of the defendants Daniel W. Morrill and Bangor and Aroostook Railroad Company (B & A). The Superior Court, in granting the defendants' motion for a summary judgment pursuant to M.R.Civ.P. 56(c),[2] concluded that the Maine Insurance Guaranty Association Act, 24–A M.R.S.A. §§ 4431–4452 (1990 & Supp.1991) (the Act), barred NHIC's subrogation action directly against the insureds of an insolvent insurance company to the extent of the payments made by NHIC. The Superior Court reached this conclusion despite the fact that the insureds' negligence had caused the injuries to Pinkham that entitled her to collect on her uninsured motorist coverage with NHIC. We affirm the judgment.

## FACTS and PROCEDURE

This action arises out of an automobile accident occurring on January 20, 1988, on Interstate 95 in Bangor, in which a vehicle owned by defendant, B & A, and driven by defendant, Morrill, who was acting within the scope of his employment, collided with a vehicle owned and driven by plaintiff, Katherine C. Pinkham. In order to avoid colliding with another vehicle operated by defendant, Susan A. Curran, that had come to rest facing southbound in the northbound lane, Pinkham was forced to come to a complete stop.[3] Morrill, who was driving north behind Pinkham, negligently rear-ended Pinkham's vehicle forcing it to collide with Curran's vehicle.

Pinkham filed a complaint in the Superior Court seeking damages for medical expenses due to serious and possibly permanent injuries, physical pain, mental anguish, lost wages and earning capacity. All defendants answered and cross-claimed. On January 22, 1991, defendants, Morrill and B & A, moved the Superior Court for a continuance stating that B & A's insurer, American Universal Insurance Company, a Rhode Island corporation, had been declared insolvent and that Pinkham was thus required to exhaust her uninsured coverage before seeking recovery from the

---

1. M.R.Civ.P. 17(c) provides in relevant part that:

   No claim or counterclaim shall be asserted on behalf of an insurer in the name of the assured for damages resulting from alleged acts of negligence, claimed by right of subrogation or assignment, unless at least 10 days prior to asserting such claim the insurer gives notice in writing to the assured of its intention to do so.

   M.R.Civ.P. 17(c).

2. M.R.Civ.P. 56(c) provides in relevant part that:

   Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, referred to in the statements required by Rule 7(c) show that there is no genuine issue as to any material fact set forth in those statements and that any party is entitled to a judgment as a matter of law.

   M.R.Civ.P. 56(c).

3. NHIC's claims against Curran are still pending. By order dated February 13, 1992, the Superior Court stayed all further proceedings in the Superior Court pending our decision on this appeal. In the same order, the Superior Court specifically ordered the entry of final judgment in favor of Morrill and B & A only.

Maine Insurance Guaranty Association (MIGA). The Superior Court granted defendants' motion.

Pinkham subsequently settled an uninsured motorist claim with her insurer, NHIC. Her auto policy provided $300,000 of uninsured/underinsured motorist coverage. The settlement, $200,000 plus an annuity purchased for $99,917 guaranteeing her future periodic payments, *represented payment in full for all of her injuries arising out of the events leading to the lawsuit.* Pinkham assigned any rights that she had against defendants to her insurer, NHIC. NHIC subsequently served a notice on Pinkham pursuant to M.R.Civ.P. 17(c) of its intention to continue prosecuting the pending action against Curran, Morrill and B & A in her name. As framed by NHIC, the issue is whether the tortfeasors, Morrill and B & A, or the victim's uninsured motorist carrier, NHIC, is ultimately responsible for the damages paid to Pinkham.

Morrill and B & A subsequently filed a motion for a summary judgment arguing that 24–A M.R.S.A. § 4435(4)[4] of the Act prohibits subrogated recoveries against the MIGA, and that 24–A M.R.S.A. § 4443[5] requires plaintiff to exhaust her uninsured motorist claim before pursuing a claim under the Act. *See Ventulett v. Maine Ins. Guar. Ass'n,* 583 A.2d 1022, 1024 (Me.1990)

(§§ 4443(1) and 4435(4) of the Act make the MIGA a guarantor of last resort).

NHIC countered by arguing that it was not pursuing a subrogation action against the MIGA as representative of an insolvent insurer, *but against the insureds themselves, defendants, Morrill and B & A.* NHIC's contention is that the Act prohibits subrogated claims against the MIGA but not against the insureds directly and, therefore, its claim is proper.

The trial court found that "a valid insurance policy was issued by American Universal Insurance Company, covering defendants Morrill and B & A." The trial court reasoned that following the insolvency of American Universal, the MIGA, pursuant to 24–A M.R.S.A. § 4438(1)(B) (1990 & Supp.1991),[6] assumed all rights, duties and obligations of the insolvent insurer, including its obligation towards the plaintiff's claim. Under the facts and circumstances of this case, the trial court reasoned that the Act prohibited NHIC from bypassing the Act's restrictions and asserting a subrogated claim directly against the insureds of an insolvent insurance company. Accordingly, the trial court granted a summary judgment in favor of Morrill and B & A.

## THE ACT

The Maine Insurance Guaranty Association Act creates a non-profit, unin-

---

**4.** 24–A M.R.S.A. § 4435(4) provides:

   **4. Covered Claim.** "Covered Claim" means any unpaid claim, including one for unearned premiums but excluding one for punitive damages, arising under and within the coverage and applicable limits of a policy of a kind of insurance referred to in section 4433 to which this subchapter applies issued by an insurer which becomes an insolvent insurer after May 9, 1970, and where:
    **A.** The *claimant or insured* is a resident of this State at the time of the insured event; or
    **B.** The property from which the claim arises is permanently located in this State. *"Covered claim" shall not include any amount due any insurer, reinsurer, affiliate, insurance pool or underwriting association, as subrogation recoveries or otherwise.*
24–A M.R.S.A. § 4435(4) (emphasis added). Clearly, as the parties concede, this section would prohibit any subrogation action against MIGA by NHIC. We also note, and reject at the

outset, NHIC's contention that Morrill is unprotected by the Act because he was not a "policy holder." The trial court found that Morrill was insured under the insurance policy in question. As an insured of an insolvent insurer that was subject to the Act, Pinkham's original claim against him would be a "covered claim" under the Act.

**5.** 24–A M.R.S.A. § 4443(1) provides:

   Any person having a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer, which is also a covered claim, shall be required to exhaust first the person's right under the policy. Any amount otherwise payable on a covered claim under this subchapter shall be reduced by the amount of any recovery under the insurance policy.
24–A M.R.S.A. § 4443(1).

**6.** *See infra* n. 8 (setting forth text of provision).

corporated, legal entity known as the Maine Insurance Guaranty Association, in which specified types of insurers (including NHIC) are required to maintain membership as a condition of their authority to conduct business in Maine. *See* 24–A M.R.S.A. § 4436. Member insurers are assessed fees which make up the assets of the Association. *See* 24–A M.R.S.A. § 4440. The Association uses the assets derived from these assessments to pay "covered claims" [7] and to defray the costs of administering the Act. *See* 24–A M.R.S.A. §§ 4438–4439. When a liability insurer becomes insolvent, the Association is deemed the insurer of the policyholder for "covered claims," up to an amount not to exceed the lesser of: (a) $300,000 or (b) the amount of the "obligation of the insolvent insurer under the policy or coverage from which the claim arises." [8] *See* 24–A M.R.S.A. § 4438(1)(A)–(B). A claimant who has other insurance coverage available beyond that of the insolvent insurer, i.e., uninsured motorist coverage, is required to first exhaust that coverage before making a claim against the MIGA. *See* 24–A M.R.S.A. § 4443(1). Any amount recovered from the uninsured motorist carrier is excepted from the claim against the MIGA, *see* 24–A M.R.S.A. § 4443(1), and the uninsured motorist carrier, if a member of the MIGA, is authorized to set off its payment on the covered claim against its assessment under the Act. *See* 24–A M.R.S.A. § 4440(5).

■ This case squarely presents the question of whether the Act bars subrogated actions by an insurer that has paid uninsured motorist benefits to its insured against the tortfeasor responsible for the damages for which such payment was made, if the insurance carrier providing liability coverage to the tortfeasor has become insolvent. We hold that the Act bars such subrogated claims to the extent paid in this case.

After conceding that NHIC is precluded by the express language of the Act from proceeding against the Association in its subrogated action, NHIC focuses on the lack of any specific language in the Act barring a subrogation action directly against the insured of an insolvent insurance company. NHIC argues that the Legislature's failure to expressly prohibit subrogation implicitly suggests an intention not to prohibit such claims. *See Wescott v. Allstate Ins. Co.*, 397 A.2d 156, 169 (Me. 1979). NHIC further notes the ease with which the Legislature could have included such prohibitory language and provides the example of *Mass.Gen.Laws*, Ch. 175D, § 1(2). *See Cordani v. Roulis*, 395 So.2d 1276 (Fla.App.1981) (Florida statute expressly forbids action against insured of insolvent insurer); *Reinsurance Ass'n of Minnesota v. Dunbar Kapple, Inc.*, 443

---

7. *See supra* note 4 (setting forth statutory definition of "covered claim").

8. 24–A M.R.S.A. § 4438(1)(A)–(B) provide:
1. **Powers and Duties.** The association shall:
A. Be obligated to pay covered claims existing prior to the determination of the insolvency or arising within 30 days after the determination of insolvency, or before the policy expiration date if less than 30 days after the determination of insolvency, or before the insured replaces the policy or causes its cancellation, if within 30 days of the determination. The obligation shall be satisfied by paying to the claimant an amount as follows:
(1) Except as provided in this paragraph, the full amount of a covered claim for benefits or unearned premium under workers' compensation insurance coverage;
(2) An amount not exceeding $100,000 per policy for a covered claim for the return of an unearned premium; or

(3) *An amount not exceeding $300,000 per claim for all other covered claims.*
*In no event is the association obligated to pay a claimant an amount in excess of the obligation of the insolvent insurer under the policy or coverage from which the claim arises.* The association shall pay only that amount of unearned premium in excess of $50. Notwithstanding any other provisions of this subchapter, a covered claim shall not include any claim filed with the association after the final date set by the court for the filing of claims against the liquidator or receiver of an insolvent insurer;
B. *Be deemed the insurer to the extent of its obligation on covered claims, and to such extent the association shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent;*
24–A M.R.S.A. § 4438(1)(A)–(B) (1990 & Supp. 1991) (emphasis added).

N.W.2d 242 (Minn.App.1989) (claim against insured expressly barred by Minnesota and Illinois statutes).

NHIC acknowledges that policy considerations may exist that support a construction of the Act that precludes the assertion of subrogated claims directly against insureds of insolvent insurers. Nevertheless, NHIC contends that such considerations are offset by the "historical and common-sense principle that the economic impact of a tortiously-inflicted injury should fall most heavily on the tortfeasor." NHIC concludes on its initial point by arguing that absent clear legislative intent to protect tortfeasors at the expense of insurers having valid subrogated claims, no legitimate justification exists for interpreting the Act in a way that would bar NHIC's otherwise valid subrogated claim against defendants Morrill and B & A. We disagree.

As Morrill and B & A note, allowing NHIC's subrogated claim would be contrary to the clear purpose of the Act of protecting the insureds of insolvent insurance companies. Section 4432 of the Act expressly articulates the purpose of the Act as including the protection of policy holders such as B & A as follows:

> The purpose of this subchapter is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment and *to avoid financial loss to claimants or policy holders because of the insolvency of an insurer,* to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.

24–A M.R.S.A. § 4432 (1990) (emphasis added). As a further guide to construction, § 4434 provides that the subchapter "... shall be liberally construed to effect the purpose stated under section 4432, which shall constitute an aid and guide to interpretation." 24–A M.R.S.A. § 4434 (1990).

Morrill and B & A also point to portions of the legislative record in support of their argument. Review of the legislative history of the Act reveals the following debate.

On January 28, 1970, Senator Logan from York explained that, "[t]he function of [the act] is twofold. One of the functions is to fend off activities of the federal government in this area." Legis.Rec. 542 (Spec.Sess.1969). The fund would also "protect the claimant in the case of the insolvency of an insurance company." *Id.* "It is an act strictly for the benefit of the public." *Id.* On January 28, 1970, Senator Logan again commented on the act as follows:

> Now, this bill is designed for the protection of the public.
>
> \* \* \* \* \* \*
>
> [I]f an insurance company in Maine that is doing business in Maine becomes insolvent the people whom it insures have a problem. They have claims against the company, that is, individuals perhaps have been involved in an automobile accident and they are relying on their automobile insurance to protect them. Maybe they are involved in a lawsuit, the insurance company becomes insolvent, and they are just out of luck.
>
> \* \* \* \* \* \*
>
> [T]his is terribly important to the insured, because they pay their premiums to the insurance companies for this protection, and they could be put in a terribly difficult situation if the company became insolvent.
>
> \* \* \* \* \* \*
>
> Furthermore, third parties involved would be protected, that is, the fellow you hit in this collision, as well as yourself.
>
> \* \* \* \* \* \*
>
> Now, the objections to this insurance could be stated, I think, this way: that you are asking *the good companies, the well managed companies, to take the rap for the poorly managed companies. This is the other side of the coin.*

*Id.* at 577 (emphasis added). Finally, on January 30, 1970, Representative Scott noted that, "[t]he express purpose behind the bill is to protect the policy holders of insolvent insurance companies." *Id.* at 601. Thus, while not conclusive on the issue of

the Legislature's intent with regard to the effect of the Act on subrogation actions as in the case at bar, the legislative record does indicate that protection of insureds was considered by members of the Legislature.

In arguing against the reasonable and logical implication that the Act bars such subrogation actions, NHIC argues for a strict statutory construction. NHIC points to numerous cases wherein this court refused to interpret a statute as modifying the common law in the absence of clear and explicit language showing that such modification or abrogation was intended. *See Rubin v. Josephson,* 478 A.2d 665 (Me. 1984); *Atlantic Oceanic Kampgrounds, Inc. v. Camden National Bank,* 473 A.2d 884 (Me.1984); *Emery Waterhouse Co. v. Lea,* 467 A.2d 986 (Me.1983); *Sebago Lake Camps, Inc. v. Simpson,* 434 A.2d 519 (Me.1981). NHIC fails to acknowledge, however, the legislative mandate that requires the Act to be liberally construed to protect the insureds of insolvent insurers. *See* 24–A M.R.S.A. § 4432 (1990). Because Pinkham's claims were covered by the Act, NHIC cannot circumvent the protections clearly contemplated by the Act through a subrogation action directly against the protected insureds.

NHIC's reliance on Maine's uninsured motorist statute 24–A M.R.S.A. § 2902 (1990) [9] as providing a statutory right of subrogation directly against Morrill and B & A is unavailing for the same reasons.

■ The fundamental objective in interpreting statutes is to determine the intent of the Legislature in enacting them and to give effect to that intent. *See Penobscot Nation v. Stilphen,* 461 A.2d 478, 481 (Me.1983), *appeal dismissed,* 464 U.S. 923, 104 S.Ct. 323, 78 L.Ed.2d 296 (1983). Further, the court should not read a statute to conflict with another statute when an alternative, reasonable interpretation yields harmony. *Id.* (citing *State v. Rand,* 430 A.2d 808, 817 (Me.1981)).

The Legislature clearly intended the Maine Insurance Guaranty Association Act to protect the insureds of insolvent insurers from financial loss due to the insolvency of an insurer to the extent that the insureds are subject to "covered claims." *See* 24–A M.R.S.A. § 4432 (1990) (setting forth purpose of Act); 24–A M.R.S.A. § 4435(4) (defining covered claim). In order to give effect to this intent, the Act must be construed to bar NHIC's subrogation action to the extent Pinkham's original claim against Morrill and B & A, as insureds of an insolvent insurer, was a "covered claim." Construing the Act in this manner will avoid the illogical result of not allowing NHIC to collect against the MIGA, while allowing NHIC to collect against those the MIGA was created to protect. Further, despite NHIC's argument urging strict construction of the statute, barring NHIC's subrogation action is merited by the legislative mandate requiring liberal construction and the clear legislative intent to protect the insureds of insolvent insurers at the expense of other insurers who are benefitting from their business in Maine. Because Pinkham's claim does not exceed $300,000, we have no occasion to consider the degree to which the Act would bar an action seeking recovery against the tortfeasor for damages beyond the $300,000 limit of covered claims. *See* 24–A M.R.S.A. § 4438(1)(A).

---

**9.** The statute requires every automobile policy issued in Maine to provide uninsured vehicle coverage. *See* 24–A M.R.S.A. § 2902(1) (1990). "Uninsured motor vehicle" is defined by the statute to include "an insured other motor vehicle where ... [t]he liability insurer of such motor vehicle is unable because of its insolvency to make payment with respect to the legal liability of its insured within the limits specified in its policy ..." *See* 24–A M.R.S.A. § 2902(3)(A). Most significantly, NHIC points to § 2902(4) which provides:

> In the event of payment to any person under uninsured vehicle coverage, and subject to the terms of such coverage, to the extent of such payment the insurer shall be entitled to the proceeds of any settlement or recovery from any person legally responsible for the bodily injury as to which such payment was made, and to amounts recoverable from the assets of the insolvent insurer of the other motor vehicle.

24–A M.R.S.A. § 2902(4) (1990). The Maine Uninsured Motorist Statute was enacted prior to the Maine Insurance Guaranty Association Act.

The entry is:

Judgment affirmed.

All concurring.