Docket No. 82384–Agenda 35–May 1997.

FRANK HASEMANN 
et al.
, Appellees, v. KAREN WHITE 
et al.
, Appellants.

Opinion filed September 25, 1997.

JUSTICE HEIPLE delivered the opinion of the court:

The Insurance Code establishes the Illinois Insurance Guaranty Fund (the Fund), a nonprofit entity created to protect policyholders of insolvent insurers and third parties making claims under policies issued by insurers that become insolvent. 215 ILCS 5/532 
et seq
. (West 1994). To make a claim on the Fund, a claimant possessing a “[c]overed claim” must first “exhaust his rights” under any other insurance policy applicable to the loss in question. 215 ILCS 5/534.3, 546(a) (West 1994). We allowed leave to appeal in this case (155 Ill. 2d R. 315) to answer the following questions: (1) Has a claimant exhausted his rights by settling his uninsured-motorist claims with his own carrier for an amount less than the policy limits? (2) If so, what is the proper measure of the Fund's setoff–the amount that the claimant actually received in the settlement or the policy limit?

The plaintiffs, Frank and Annette Hasemann and Nanette Buccieri, sued the defendants, Karen White, Steven Hutcherson, and Constance Gilham, to recover damages for personal injuries sustained in an automobile accident, and filed suit in the circuit court of Cook County. The defendants' insurer, Prestige Casualty Company, became insolvent, and pursuant to the Illinois guaranty fund act (the Act) (215 ILCS 5/532 
et seq
. (West 1994)) the Fund took over the defendants' defense.

A motorist insured by an insolvent insurer is deemed an uninsured motorist (215 ILCS 5/143a(3) (West 1994)), so the plaintiffs moved to stay the proceedings against the defendants while they made a claim against their own uninsured-motorist carrier. The plaintiffs subsequently settled with their uninsured-motorist carrier for an amount less than their policy limits of $50,000/$100,000. Frank Hasemann accepted $7,500, and Buccieri accepted $3,000. The plaintiffs then proceeded against the defendants in the circuit court and obtained an arbitration award for an amount greater than their settlement with their uninsured-motorist carrier. The arbitrators awarded $9,000 to Frank Hasemann and $4,000 to Buccieri. The circuit court ultimately entered judgment on the arbitration award subject to a setoff in the amount that the plaintiffs' actually received in settlement from their uninsured-motorist carrier; that amount being less than their uninsured-motorist policy limits.

The defendants appealed and argued that the circuit court erred in allowing a setoff in the amount of the plaintiffs' settlement as opposed to the full amount of the plaintiffs' uninsured-motorist policy limits. The appellate court affirmed and held that the plaintiffs “exhausted” their rights against their own uninsured-motorist carrier when they entered into settlement and that the setoff was appropriately limited to the amount that the plaintiffs actually received under the settlement. 284 Ill. App. 3d 183, 188.

Every state has established an insurance guaranty fund to protect policyholders in the event that an insurance company becomes insolvent. J. Dunne, Insurer Insolvency and State Guaranty Funds, Insolvency and Solidity of Insurance Companies 83, 86-92 (1987). The statutes creating guaranty funds in most states, including Illinois, are based on the Model Property and Casualty Post-Assessment Guaranty Association Act. All insurance companies authorized to transact business in Illinois are members of the Fund (215 ILCS 5/534.5 (West 1994)), and each member company contributes to the Fund (215 ILCS 5/537.6 (West 1994)).

The principal obligation of the Fund is to pay the “covered claims” of insolvent insurers. The Act defines a “covered claim” as follows:

“(a) `Covered claim' means an unpaid claim for a loss arising out of and within the coverage of an insurance policy to which this Article applies ***.

* * *

(b) `Covered claim' does not include:

(i) any amount in excess of the applicable limits of liability provided by an insurance policy to which this Article applies; nor

* * *

(v) any claim for any amount due any reinsurer, insurer, insurance pool, or underwriting association as subrogated recoveries, reinsurance recoverables, contribution, indemnification or otherwise. No such claim held by a reinsurer, insurer, insurance pool, or underwriting association may be asserted in any legal action against a person insured under a policy issued by an insolvent company other than to the extent such claim exceeds the Fund obligation limitations set forth in Section 537.2 of this Code.” 215 ILCS 5/534.3 (West 1994).

The Fund's liability on a “covered claim” is not coextensive with the obligations of the insolvent insurer's obligations under its policies. Rather, the Act provides that the Fund's liability on a “covered claim” is limited to a maximum of $300,000 or the limit of the insolvent insurer's policy, whichever is less. 215 ILCS 5/537.2 (West 1994).

Before a claimant possessing a “covered claim” can recover from the Fund, he must “exhaust” his rights under any other insurance policy applicable to the loss. The Act expressly provides:

“Non-duplication of recovery. (a) Any insured or claimant having a covered claim against the Fund shall be required first to exhaust his rights under any provision in any other insurance policy which may be applicable to the claim. Any amount payable on a covered claim under this Article shall be reduced by the amount of such recovery under such insurance policy.” 215 ILCS 5/546 (West 1994).

The issue in this case concerns the application of the nonduplication of recovery provision when a claimant has settled with his own uninsured-motorist carrier for less than the policy limit and then seeks to make a claim on the Fund.

The Illinois Act and the Model Act do not describe how a claimant “exhausts” his or her rights under another applicable policy. Courts in other jurisdictions interpreting nonduplication of recovery provisions substantially similar to the one in the Illinois Act have reached disparate conclusions. Some courts have held that a claimant who settles with his own carrier for less than the uninsured-motorist policy limits has exhausted his rights and the guaranty fund's liability is offset by the amount of the settlement, provided that it was reached in good faith. See 
Alabama Insurance Guaranty Ass'n v. Colonial Freight Systems, Inc.
, 537 So. 2d 475, 476 (Ala. 1988); 
Watts v. Michigan Department of State
, 394 Mich. 350, 357, 231 N.W.2d 43, 45 (1975). Several courts have held that a settlement for less than the uninsured-motorist policy limits precludes any claim on the guaranty fund because a settlement does not satisfy the “exhaustion” requirement. See 
Witkowski v. Brown
, 576 A.2d 669, 671 (Del. Super. 1989); 
Oliver v. Oklahoma Property & Casualty Insurance Guaranty Ass'n
, 774 S.W.2d 902 (Mo. App. 1989); 
Burke v. Valley Lines, Inc.
, 421 Pa. Super. 362, 368, 617 A.2d 1335, 1338 (1992); 
Prutzman v. Armstrong
, 90 Wash. 2d 118, 122, 579 P.2d 359, 362 (1978). A majority of courts, however, have steered a middle course and have held that a settlement does constitute an exhaustion of rights, but that the guaranty fund's liability is reduced by the full amount of the uninsured-motorist policy limits, regardless of the amount that the claimant actually received under the settlement. See 
California Insurance Guarantee Ass'n v. Liemsakul
, 193 Cal. App. 3d 433, 440, 238 Cal. Rptr. 346, 349 (1987); 
Colorado Insurance Guaranty Ass'n v. Harris
, 827 P.2d 1139, 1142 (Colo. 1992); 
Hetzel v. Clarkin
, 244 Kan. 698, 706, 772 P.2d 800, 806 (1989); 
Kenny v. Hoschar
, 675 So. 2d 807, 810 (La. App. 1996) 
Belongia v. Wisconsin Insurance Security Fund
, 195 Wis. 2d 835, 849, 537 N.W.2d 51, 55 (Wis. App. 1995).

We find the majority approach the more persuasive one, and we join those courts in holding that a claimant is not required to obtain a judgment in order to exhaust his rights under “any other” applicable policy; a settlement satisfies the exhaustion requirement but the Fund's liability is offset by the full amount of the claimant's policy limits. There is an obvious tension between the other possible constructions of the nonduplication provision and the language and purpose of the Act. On the one hand, limiting the Fund's setoff to the amount actually received by the claimant under the settlement would invite collusion and provide little incentive for a claimant to pursue a full and fair settlement with his own carrier. On the other hand, requiring a claimant to fully litigate his uninsured-motorist claim in order to satisfy the exhaustion requirement would be contrary to our public policy which encourages the settlement of claims. See 
In re Guardianship of Babb
, 162 Ill. 2d 153, 169 (1994). Indeed, recognizing these competing concerns, the Illinois Guaranty Fund has advocated the majority approach, which it asserts will prevent unnecessary delay and burden to claimants.

Allowing a claimant to recover from the Fund subject to a reduction corresponding with the policy limits of his uninsured-motorist coverage avoids duplicative and windfall recoveries. The Act requires that the claimant first collect from his own uninsured-motorist coverage before he makes a claim on the Fund. After the claimant has received up to the policy limit of his uninsured-motorist coverage, he is then entitled to recover from the Fund up to the policy limits of the defendant's insolvent insurer, less the policy limits of the claimant's uninsured-motorist policy. The rationale behind the nonduplication provision is to insure that the Fund is a recovery of last resort by requiring that the claimant first seek to cover his loss with funds available from other insurers. Consistent with this rationale, a claimant who settles with his uninsured-motorist carrier for less than the policy limit should be assumed to have received the policy limit for purposes of assessing Fund liability. When a claimant settles with his own carrier for less than the policy limits, the claimant must bear the risk of settling too cheaply.

In short, we conclude that a claimant who settles with his insurer for less than his policy limits has “exhausted” his rights, but that Fund liability should be offset by the amount that the claimant could have recovered under his uninsured-motorist policy, 
i.e.
, the policy limits, without regard to the amount that the claimant actually received from his own carrier. Because the Fund is entitled to a setoff in the amount of the policy limits of the claimants' uninsured-motorist policy and the claimants' loss does not exceed their uninsured-policy limits, the Fund has no liability in this case.

Accordingly, we reverse the judgments of the circuit and appellate courts.

Judgments reversed.