2004 ME 140

**JACKSON BROOK INSTITUTE, INC., et al.**

v.

**MAINE INSURANCE GUARANTY ASSOCIATION.**

Supreme Judicial Court of Maine.

Argued: Oct. 20, 2004.
Decided: Nov. 10, 2004.

James T. Kilbreth, Esq., Jonathan R. Doolittle, Esq., Dylan Smith, Esq. (orally), Verrill & Dana, LLP, Portland, for plaintiffs.

John S. Whitman, Esq. (orally), Paul R. Johnson, Esq., Richardson, Whitman, Large & Badger, P.C., Portland, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

RUDMAN, J.

■ [¶ 1] The United States Bankruptcy Court for the District of Maine (*Haines, J.*) has certified[1] four questions of law. We do not answer numbers one, two, or four of the questions as there is clear controlling Maine precedent, and/or material facts that are either in dispute or not before us.[2] M.R.App. P. 25(a); *N. River Ins. Co. v. Snyder,* 2002 ME 146, ¶ 7, 804 A.2d 399, 401; *Darling's v. Ford Motor Co.,* 1998 ME 232, ¶ 2, 719 A.2d 111, 114. The third question is: "Does Speltz's settlement of claims against other policies (issued by Executive Risk Indemnity, Inc. ("ERI"), and Royal Insurance Company ("Royal")), which encompassed claims against Brooks as well as claims against other officers and directors of JBI, for the total amount of $2 million from ERI (whose policy limit was $3 million) and Royal (whose policy limit was $2 million) preclude claims against the Maine Insurance Guaranty Association (MIGA) resulting from Reliance's insolvency because those policies were not "exhausted" within the meaning of 24–A M.R.S.A. § 4443?" We answer the question in the affirmative.

## I. BACKGROUND

[¶ 2] The following facts are taken from the parties' stipulation of facts. Prior to its bankruptcy, Jackson Brook Institute, Inc. (JBI) operated a psychiatric hospital in South Portland. On March 27, 1998, JBI filed a petition pursuant to Chapter 11 of the Bankruptcy Code, and from March

---

1. Appellate rule 25, which governs certified questions provides:

   When it shall appear to the Supreme Court of the United States, or to any of the Courts of the Appeals or District Courts of the United States that there are involved in any proceeding before it one or more questions of law of this State which may be determinative of the cause and that there are no clear controlling precedents in the decisions of the Supreme Judicial Court, such federal court may, upon its own motion or upon request of any interested party, certify such questions of law of this State to the Supreme Judicial Court sitting as the Law Court, for instructions concerning such questions of state law.

   M.R.App. P. 25(a).

2. Questions one, two and four, as presented, read:

   1. Does the "insured vs. insured" exclusion in the directors' and officers' liability insurance policy (the "D & O Policy") issued by Reliance Insurance Company ("Reliance") to Jackson Brooke Institute ("JBI"), as debtor-in-possession, operate to exclude claims brought by Speltz Consulting, LLC ("Speltz"), as trustee of the JBI Creditors' Trust, on account of established defalcations of Gary Brooks ("Brooks"), as post-petition officer of JBI?

   2. Did JBI's failure to list Brooks as an officer or director in its quote request and application for the D & O Policy, and/or the fact that Brooks's name does not appear on the list of officers and directors accompanying the policy when issued, preclude Brooks's status as an "insured" under the D & O Policy?

   . . . .

   4. If coverage for the claims against Brooks is not excluded or barred as a result of the foregoing issues, do the actions of Brooks for which he has been adjudged liable constitute a single claim, or multiple claims, as relates to the statutory $300,000 per claim cap on MIGA liability?

1998 through March 1999, JBI operated as a debtor-in-possession. On March 17, 1999, the Bankruptcy Court entered an order approving a joint plan of reorganization and on March 31, 1999, approved the creation of the JBI Creditors' Trust and trustee in bankruptcy.

[¶ 3] Prior to bankruptcy, JBI's parent company obtained two policies of directors, officers, and trustees's liability insurance (D & O Policies). Both policies covered claims made against JBI's directors and officers from November 26, 1997, through November 26, 1999. The Executive Risk policy had a liability limit of $3 million, and the Royal policy limited liability at $2 million.[3]

[¶ 4] After JBI declared bankruptcy, Reliance Insurance issued a primary D & O policy to JBI covering claims made between June 9, 1998 and June 9, 1999, arising from conduct following JBI's bankruptcy filing. The Reliance policy had a liability limit of $1 million and contained an "insured vs. insured" exclusion. On May 14, 1999, the JBI trustee in bankruptcy commenced a proceeding against Allomet Partners, Ltd. and its principal, Gary Brooks, chief executive officer of JBI from March 27, 1998 until June 8, 1998. The JBI trustee provided notice to Reliance of its claims in the Brooks/Allomet action, and Reliance subsequently denied coverage. The JBI trustee and Brooks ultimately reached a settlement under which Brooks assigned his rights in all applicable D & O policies to the JBI trustee in return for the trustee's agreement not to attempt to recover by execution against Brooks's assets. On December 7, 2000, pursuant to the settlement, the Bankruptcy Court entered a $725,000 judgment against Brooks.

[¶ 5] Following the judgment against Brooks, the JBI trustee commenced an action against ERI, Royal, and Reliance seeking coverage under their respective D & O policies. The trustee soon learned that Reliance had been found insolvent. On April 10, 2003, the JBI trustee, ERI, and Royal mediated to attempt a resolution of the D & O action and the trustee's claims against ERI and Royal. The mediation resulted in a settlement of $2 million from an available $5 million of coverage. Following the mediation settlement, the JBI trustee tried to substitute MIGA for then insolvent Reliance in the proceeding and MIGA ultimately consented to the substitution.

[¶ 6] On October 3, 2003, the JBI trustee filed a motion for a summary judgment against MIGA, seeking to collect on the money judgment against Brooks. Thereafter, MIGA opposed the motion and cross-motioned for a summary judgment. The JBI trustee contends that MIGA is obligated to pay the judgment pursuant to the provisions in the D & O's liability policy purchased by JBI, as debtor-in-possession, from the insolvent Reliance Insurance Company. On March 23, 2004, the Bankruptcy Court certified the above four questions.

## II. DISCUSSION

■ [¶ 7] MIGA argues that the JBI trustee's claim is barred because the trustee's settlement with ERI and Royal for less than policy limits failed to exhaust its claims pursuant to the statute, 24-A M.R.S.A. § 4443 (2000). The JBI trustee counters that the weight of authority, public policy, and the statute's purpose all require that exhaustion does not mean that there must be full payment of policy limits.

**3.** Effective April 22, 1998, both Executive Risk and Royal issued cancellations of their D & O policies. On November 5, 1998, the Bankruptcy Court declared the cancellations ineffective.

We have not yet interpreted what constitutes exhaustion pursuant to the statute.

[¶ 8] Title 24–A M.R.S.A. § 4443(1) states in relevant part:

Any person having a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer, which is also a covered claim, shall be required to exhaust first the person's right under the policy. . . .

[¶ 9] "When interpreting a statute, we seek to give effect to the intent of the Legislature by examining the plain meaning of the statutory language and considering the language in the context of the whole statutory scheme." *Darling's v. Ford Motor Co.*, 1998 ME 232, ¶ 5, 719 A.2d 111, 114. "Unless the statute itself discloses a contrary intent, words in a statute must be given their plain, common, and ordinary meaning, such as [people] of common intelligence would usually ascribe to them." *Butterfield v. Norfolk & Dedham Mut. Fire Ins. Co.*, 2004 ME 124, ¶ 4, 860 A.2d 861 (citing *State v. Vainio*, 466 A.2d 471, 474 (Me.1983)). The purpose of the Maine Insurance Guaranty statute "is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer . . . ." 24–A M.R.S.A. § 4432 (2000). In order to effectuate its statutory purpose, the statute is to be liberally construed. *Me. Ins. Guar. Ass'n v. Folsom*, 2001 ME 63, ¶ 5, 769 A.2d 185, 188.

[¶ 10] Several jurisdictions have found that settlements for less than policy limits do not constitute exhaustion pursuant to their respective guaranty statues. *See Witkowski v. Brown*, 576 A.2d 669, 672 (Del.Super.Ct.1989); *Oliver v. Okla. Prop. & Cas. Ins. Guar. Ass'n*, 774 S.W.2d 902, 904 (Mo.Ct.App.1989); *Burke v. Valley Lines, Inc.*, 421 Pa.Super. 362, 617 A.2d 1335, 1338 (1992); *Higginbotham v. Rossi*, 1994 WL 930978, at *2, 1994 R.I.Super. LEXIS 109, at *6; *Prutzman v. Armstrong*, 90 Wash.2d 118, 579 P.2d 359, 362 (1978); *see also Vokey v. Mass. Insurers Insolvency Fund*, 381 Mass. 386, 409 N.E.2d 783, 786 (1980) ("The purpose of the exhaustion requirement . . . is to render the Fund a source of last resort in the event of insolvency."). *But see, e.g., Colo. Ins. Guar. Ass'n v. Harris*, 827 P.2d 1139, 1142–43 (Colo.1992); *Hasemann v. White*, 177 Ill.2d 414, 226 Ill.Dec. 788, 686 N.E.2d 571, 573–74 (1997); *Hetzel v. Clarkin*, 244 Kan. 698, 772 P.2d 800, 806 (1989).

[¶ 11] In *Prutzman*, the Washington Supreme Court decided that settlement for less than policy limits is not exhaustion within the meaning of the state's guaranty statute. *Prutzman*, 579 P.2d at 361–62. The Washington Court considered whether the respondent was entitled to proceed against the Washington Insurance Guaranty Association after her settlement with her uninsured motorist insurer. *Id.* The court held that respondent's settlement for less than the policy limit was inadequate to constitute exhaustion under the statute. *Id.* at 362. It reasoned that "[a]ny other interpretation [of exhaustion] would furnish no incentive for plaintiffs to seek an adequate settlement from their own insurer because they could always force the [insurance guaranty association] to pay the difference between the settlement and the actual value of their claim." *Id.*

[¶ 12] We find the Washington Supreme Court's reasoning persuasive. The Maine Insurance Guaranty Association exists for claimants of insolvent insurers who have no other source of recovery for damages, and therefore, the policy provisions behind MIGA make it a guarantor of last resort. *See Ventulett v. Me. Ins. Guar. Ass'n*, 583 A.2d 1022, 1023 (Me.

1990). In accordance with the exhaustion requirement in the statute, a claimant must first look beyond MIGA for insurance coverage and exhaust that coverage first. *Id.* at 1023–24.

■ [¶ 13] The MIGA Act provides that a person is "required to exhaust first the person's right under the policy." 24–A M.R.S.A. § 4443(1). The language is clear on its face. Where the language is clear, this Court is bound by the plain meaning of the words. *Butterfield,* 2004 ME 124, ¶ 4, 860 A.2d at 862 (citation omitted). The dictionary defines "exhaust" as "to use up the whole supply or store of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 796 (1971); *see also* WEBSTER'S NEW INTERNATIONAL DICTIONARY 893 (2d ed.1958) ("to deprive completely"); MERRIAM-WEBSTER ONLINE DICTIONARY *available at* http://www.m-w.com/ ("to consume entirely"). The Legislature clearly intended parties to obtain the policy limits from their own insurance before seeking coverage from MIGA. JBI had two insurance policies with a total policy limit of $5 million and settled for less than half that amount. This cannot be "consum[ing] entirely" or "us[ing] up the whole supply." As a result, the JBI trustee's settlement for less than policy limits does not comply with the statute's exhaustion requirement.

The entry is:

Question 1: We decline to answer.

Question 2: We decline to answer.

Question 3: Yes.

Question 4: We decline to answer.