916 A.2d 204 (2007)
2007 ME 40
Rebecca BEANE et al.
v.
MAINE INSURANCE GUARANTY ASSOCIATION.
Supreme Judicial Court of Maine.
Argued: September 19, 2006.
Decided: March 1, 2007.
*205 William D. Robitek, Esq., Paul F. Macri, Esq. (orally), Berman & Simmons, P.A., Lewiston, ME, for plaintiffs.
Joseph C. Tanski, Esq., Mark D. Robins, Esq. (orally), Nixon Peabody LLP, Boston, MA, John H. Rich III, Esq., Jennifer H. Pincus, Esq., Perkins Thompson Hinckley & Keddy, P.A., Portland, ME, for defendant.
Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.
Majority: DANA, CALKINS, LEVY, and SILVER, JJ.
Dissent: SAUFLEY, C.J., and CLIFFORD and ALEXANDER, JJ.
DANA, J.
[¶ 1] Rebecca and David Beane appeal from a judgment of the Superior Court (Kennebec County, Studstrup, J.) granting the Maine Insurance Guaranty Association's (MIGA) motion for summary judgment. The trial court found that MIGA had no obligation to pay the Beanes anything on their medical malpractice claim because the Beanes had not exhausted the solvent insurance coverage held by one of the two physicians involved. See 24-A M.R.S. § 4443(1) (2006). The Beanes contend that the trial court erred, inter alia, in holding that they failed to exhaust the limits of a solvent insurance policy under *206 the Maine Insurance Guaranty Association Act. We agree and vacate the judgment.

I. BACKGROUND
[¶ 2] In 2003, the Beanes filed a complaint against Drs. Daniel Pierce and Sheridan Oldham for negligently failing to diagnose and treat Rebecca's breast cancer. Dr. Pierce's insurance carrier, PHICO, was deemed insolvent in 2002. Because of PHICO's insolvency, MIGA, a nonprofit, unincorporated entity established pursuant to 24-A M.R.S. §§ 4431-4452 (2006), assumed Dr. Pierce's defense. The Beanes settled their claims against Dr. Oldham for $600,000, an amount well below the $1,000,000 limit of the doctor's solvent insurance coverage with St. Paul Insurance Company (St.Paul). MIGA refused to take part in those settlement negotiations.
[¶ 3] The Beanes sought a declaratory judgment that MIGA was liable under the PHICO policy for up to $300,000 and was not permitted to reduce its liability to the Beanes by the settlement they received from St. Paul. MIGA filed a motion for summary judgment contending that it was not obligated to pay the Beanes because they had not exhausted Dr. Oldham's solvent insurance coverage as is required by 24-A M.R.S. § 4443(1), the exhaustion provision of the Act. The Beanes filed a cross-motion for summary judgment.
[¶ 4] After the court granted MIGA's summary judgment motion and denied the Beanes', the Beanes filed a notice of appeal in February 2005. Later that month, the Beanes, Dr. Pierce, and MIGA reached a settlement dismissing with prejudice all claims against Dr. Pierce. The settlement stipulated that should we find that the Beanes had no duty under the MIGA Act to exhaust the full $1,000,000 of Dr. Oldham's solvent coverage, MIGA would pay the Beanes $300,000; but should we find a duty to recover the full amount of Dr. Oldham's coverage, MIGA would pay nothing, and the matter would be dismissed with prejudice.
[¶ 5] In our opinion, on the first appeal, we noted that the parties "made no effort to reopen the record in the Superior Court to add the settlement documents." Beane v. Me. Ins. Guar. Ass'n, 2005 ME 104, ¶ 8, 880 A.2d 284, 286. Because M.R.App. P. 5 includes "no provision to add to the record on appeal material that was not presented to the trial court," we vacated the judgment and remanded with instructions to consider the settlement agreement and "any agreed statement or finding regarding the Beanes' total damages." Id. ¶¶ 7, 10, 13, 880 A.2d at 286-87.
[¶ 6] On remand, the Beanes and MIGA stipulated for purposes of the pending appeal that the total damages stemming from the medical malpractice suit exceeded $1,000,000. The trial court reconsidered the parties' cross-motions for summary judgment in light of the supplemented record and again granted MIGA's motion, finding that "the additional information add[ed] little to the legal argument and [did] not change the court's analysis." Beane v. Me. Ins. Guar. Ass'n, 2005 Me. Super LEXIS 182, at *3. This second appeal followed.

II. DISCUSSION
A. The Maine Insurance Guaranty Association Act
[¶ 7] The MIGA Act, enacted by the Legislature in 1969, created a nonprofit, unincorporated entity known as MIGA. 24-A M.R.S. § 4436 (2006). When a liability insurer becomes insolvent, MIGA is deemed the insurer of the policyholder for "the full amount of the covered claim for benefits" up to a limit of $300,000 per *207 claim. 24-A M.R.S. § 4438(1)(A) (2005).[1] The Act requires certain types of insurers to be members of the Association as a condition of their doing business in Maine. 24-A M.R.S. § 4436. Member insurers "are assessed fees which make up the assets of the Association." Pinkham v. Morrill, 622 A.2d 90, 93 (Me.1993). MIGA then "uses the assets derived from these assessments to pay `covered claims' and to defray the costs of administering the Act." Id.
[¶ 8] Section 4443(1) of the Act requires a "person having a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer . . . shall be required to exhaust first the person's right under" the solvent policy.[2]
B. Standard of Review
[¶ 9] When, as in this case, the facts are undisputed, we review the court's entry of a summary judgment for errors of law. City of Bangor v. Penobscot County, 2005 ME 35, ¶ 8, 868 A.2d 177, 180. Thus, we must determine whether the court erred as a matter of law in its interpretation of 24-A M.R.S. § 4443(1). "Statutory interpretation is a legal question subject to de novo review." City of Bangor, 2005 ME 35, ¶ 9, 868 A.2d at 180.
C. Meaning of the Exhaustion Clause
[¶ 10] In determining whether the Beanes must exhaust the limits of Dr. Oldham's solvent coverage prior to seeking any recovery from MIGA, we must first determine whether the Beanes had "a claim against an insurer under any provision in an insurance policy" pursuant to section 4443(1) of the Act. When a statute is unambiguous, we do not look beyond the plain meaning of its language.[3]Tibbetts v. Me. Bonding & Cas. Co., 618 A.2d 731, 733 (Me.1992).
[¶ 11] The Beanes contend that the exhaustion requirement applies only to those who have "a claim against an insurer under any provision in an insurance policy." See 24-A M.R.S. § 4443(1). The Beanes argue that this provision applies only to claims against an insurer by virtue of a contractual relationship. We agree.
[¶ 12] MIGA contends that the exhaustion clause also applies to claims against an insurer pursuant to Maine's reach-and-apply statute, 24-A M.R.S. § 2904 (2006).[4] *208 We need not decide that question here because we agree with the Beanes' contention that at the time of their settlement with Dr. Oldham and St. Paul, they did not have a judgment against Dr. Oldham and, as a consequence, did not have a claim against St. Paul. See Ashe v. Enter. Rent-A-Car, 2003 ME 147, ¶ 14, 838 A.2d 1157, 1162 (holding that a "final judgment against the tortfeasor is a condition precedent to the injured party's right to institute an action against the tortfeasor's liability insurer"); Associated Hosp. Serv. of Me. v. Me. Bonding & Cas. Co., 476 A.2d 189, 190-91 (Me.1984) ("In the absence of the liability of the insured there can be no right of action against his insurer."); Allen v. Pomroy, 277 A.2d 727, 730 (Me.1971) ("It, therefore, becomes apparent that it is proscribed practice in Maine to bring a direct action against an insurance company in a negligence case prior to final judgment [against the defendant insured], the only remedy being found in the `Reach and Apply' statute.").
[¶ 13] We conclude as a matter of law that section 4443(1) does not apply to claims by nonparties to the insurance contract (i.e., third-party claims)[5] and we do not here decide whether it applies to post-judgment claims against the insured's insurance company pursuant to Maine's reach-and-apply statute, 24-A M.R.S. § 2904.
The entry is:
Judgment vacated.
CLIFFORD, J., with whom SAUFLEY, C.J., and ALEXANDER, J., join, dissenting.
[¶ 14] The Court construes 24-A M.R.S. § 4443(1) (2006), the nonduplication of recovery or exhaustion provision of the Maine Insurance Guaranty Association (MIGA) statute, as not applying to claims against a third party insurer. Because, in my view, that construction of section 4443(1) is contrary to the language and purpose of the statute creating MIGA, I respectfully dissent.
[¶ 15] MIGA was created to protect injured persons by providing funds to compensate them for their damages claims against responsible parties when the insurers providing coverage for those injuries become insolvent. See Jackson Brook Inst., Inc. v. Me. Ins. Guar. Ass'n, 2004 ME 140, 861 A.2d 652. We have described MIGA as the "guarantor of last resort" because MIGA is required to pay the damages of an injured claimant only when the claimant is prevented from recovery by the insolvency of an insurance carrier, and only when the claimant has no other source of recovery for damages. Id. ¶ 12, 861 A.2d at 656; Ventulett v. Me. Ins. Guar. Ass'n, 583 A.2d 1022, 1023 (Me. 1990).
[¶ 16] The requirement that a claimant exhaust all sources of recovery in section 4443(1) means that MIGA is protected from paying a claim when there is a solvent *209 insurance company that has collected premiums to provide coverage for the claimant's loss, and the coverage of that policy is available to compensate the claimant. Pursuant to section 4443(1), a claimant is required to first seek compensation from such an insurer available to compensate for the suffered damages, and must "exhaust that coverage" before looking to MIGA for funds. Jackson Brook, 2004 ME 140, ¶ 12, 861 A.2d at 657. Section 4443(1) specifically provides:
Any person having a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer, which is also a covered claim, shall be required to exhaust first the person's right under the policy. Any amount otherwise payable on a covered claim under this subchapter shall be reduced by the amount of any recovery under the insurance policy.[[6]]
24-A M.R.S. § 4443(1).
[¶ 17] Unlike other provisions in the MIGA statute, section 4443(1) does not distinguish between first party and third party insurers, and contains no limitations or exclusions on the exhaustion requirement based on the status of the claimant as a third party. Title 24-A M.R.S. § 4443(3), for example, requires that a claimant must pursue a claim against a guaranty association of another state before seeking recovery from MIGA "except that, if it is a first party claim for damage to property with a permanent location," the claimant must seek recovery first from the guaranty association of the location of that property. 24-A M.R.S. § 4443(3) (2006) (emphasis added). Likewise, 24-A M.R.S. § 4435(4)(B) (2006) refers to certain "first-party claims" as being excluded from the obligations of MIGA.
[¶ 18] Although the Legislature was thus well aware of the difference between first party and third party insurance coverage, section 4443(1) makes no such distinction between first party and third party insurers. I would conclude that it neither excludes claims covered by third party insurers from the requirement that the claims be exhausted, nor limits the application of the exhaustion requirement to claims against first party insurers.
[¶ 19] Moreover, in Jackson Brook, we applied the exhaustion requirement of section 4443(1) to a claim against a third party liability insurer providing coverage against directors' and officers' liability; we held that MIGA was not liable for damages because the claimant failed to exhaust all of the claimant's rights against a solvent liability insurer.[7]Jackson Brook, 2004 ME 140, ¶¶ 1, 13, 861 A.2d at 654, 657.
[¶ 20] In this case, Dr. Oldham and Dr. Pierce were each responsible for the total damages to the Beanes. See 14 M.R.S. § 156 (2006) (providing for joint and several liability). The Beanes had claims against both doctors for their damages. Both doctors had insurance coverage. Dr. *210 Pierce's insurer, PHICO Insurance Company, became insolvent. Dr. Oldham, however, had insurance coverage with a solvent insurer whose policy covered the Beanes' claim against Dr. Oldham in the amount of $1,000,000. Despite the fact that the Beanes have damages exceeding $1,000,000, the Beanes settled the claim against Dr. Oldham for $600,000, leaving $400,000 of coverage for their claim that was not exhausted by the settlement. Recovery against MIGA is precluded unless a claimant has "no other source of recovery for damages." Jackson Brook, 2004 ME 140, ¶ 12, 861 A.2d at 656 (emphasis added). Because there is $400,000 from Dr. Oldham's solvent insurer that is available as a potential source of recovery for damages suffered by the Beanes, section 4443(1), the exhaustion provision, when properly construed, precludes their recovery against MIGA. Accordingly, I would affirm the judgment of the Superior Court.
NOTES
[1] Title 24-A M.R.S. § 4438(1)(A) has since been amended. P.L.2005, ch. 603, § 1 (effective date Aug. 23, 2006) (codified at 24-A M.R.S. § 4438(1)(A) (2006)).
[2] Title 24-A M.R.S. § 4443(1) provides:

Insurance policy. Any person having a claim against an insurer under any provision in an insurance policy, other than that of an insolvent insurer, which is also a covered claim, shall be required to exhaust first the person's right under the policy. Any amount otherwise payable on a covered claim under this subchapter shall be reduced by the amount of any recovery under the insurance policy.
[3] Although we find the plain language of the exhaustion clause to be unambiguous, we note that the legislative history of the Act, and of the Post-Assessment Insurance Guaranty Association Model Bill on which it is premised, provided no indication that the authors intended another meaning.
[4] Title 24-A M.R.S. § 2904 (2006) provides:

Whenever any person, administrator, executor, guardian, recovers a final judgment against any other person for any loss or damage specified in section 2903, the judgment creditor shall be entitled to have the insurance money applied to the satisfaction of the judgment by bringing a civil action, in his own name, against the insurer to reach and apply the insurance money, if when the right of action accrued, the judgment debtor was insured against such liability and if before the recovery of the judgment the insurer had had notice of such accident, injury or damage.
[5] Although we hold that the exhaustion clause does not apply to third party claims, the opinions of other state courts, interpreting substantially similar exhaustion clauses, have been mixed. Although some courts have held that the exhaustion clause applies only to the parties to the insurance contract, see Med. Malpractice Joint Underwriting Ass'n of R.I. v. R.I. Insurers' Insolvency Fund, 703 A.2d 1097, 1101-02 (R.I.1997); Ins. Comm'r of State of Md. v. Prop. & Cas. Ins. Guar. Corp., 313 Md. 518, 546 A.2d 458, 463-65 (1988); Sands v. Pa. Ins. Guar. Ass'n, 283 Pa.Super. 217, 423 A.2d 1224, 1226-27 (1980) overruled by statute, other state courts have held that the exhaustion clause applies to nonparties as well, see e.g., H.K. Porter Co. v. Penn. Ins. Guar. Ass'n, 75 F.3d 137, 141-42 (3d Cir.1996); PIE Mut. In. Co. v. Ohio Guar. Ass'n, 66 Ohio St.3d 209, 611 N.E.2d 313, 315 (1993); Conn. Ins. Guar. Ass'n v. Union Carbide Corp., 217 Conn. 371, 585 A.2d 1216, 1220-21 (1991).
[6] By its plain language, section 4443(1) requires, by the use of the mandatory term "shall," that all claimants seeking MIGA coverage must exhaust the recovery available "from any other insurance sources." Ventulett v. Me. Ins. Guar. Ass'n, 583 A.2d 1022, 1024 (Me.1990).
[7] A liability insurer is a third party insurer:

[A] first party insurance policy provides coverage for loss or damage sustained directly by the insured (e.g., life, disability, health, fire, theft and casualty insurance). A third party liability policy, in contrast, provides coverage for liability of the insured to a "third party" (e.g., a CGL policy, a directors and officers liability policy, or an errors and omissions policy).
Montrose Chem. Corp. v. Admiral Ins. Co., 10 Cal.4th 645, 42 Cal.Rptr.2d 324, 332, 913 P.2d 878 (1995).