STATE OF MAINE
CUMBERLAND, ss



SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-06-626

ERIC PURCELL and
TRACY PURCELL,
Plaintiffs

v.

JAMES MEHLHORN,
Defendant

and

MAINE INSURANCE
GUARANTY ASSOCIATION,
Intervenor-Defendant

v.

RICHARD NEUTS and
MAINE DEPARTMENT OF TRANSPORTATION,
Third Party Defendants

DECISION ON
STIPULATED FACTS

DONALD L. GARBRECHT
LAW LIBRARY

FEB 06 2008

Before the Court are the parties' arguments on stipulated facts to determine the extent of the Intervenor-Defendant Maine Insurance Guaranty Association's obligation to pay Plaintiff Eric Purcell pursuant to 24-A M.R.S.A. § 4432 et seq.

**STIPULATED FACTS**

On November 17, 2000, Eric Purcell ("Purcell") was a passenger in a car driven by Richard Neuts ("Neuts"), an employee of the Maine Department of Transportation ("DOT"). The car in which Purcell and Neuts were driving collided with a car driven by James Mehlhorn ("Mehlhorn"). Purcell sustained damages resulting from the Collision in the amount of $137,059.51. Mehlhorn is liable to Purcell for negligence as a result of the Collision and Purcell's damages.

At all relevant times, Mehlhorn was insured for motor vehicle liability with Reliance Insurance Company ("Reliance") with limits for bodily injury coverage up to $50,000.00 per person and $100,000.00 per accident. Reliance was deemed insolvent by the Commonwealth Court of Pennsylvania in October 2001.

At all relevant times, Purcell was insured for uninsured motorist coverage with Allstate Indemnity Company ("Allstate") up to $50,000.00 per person. Uninsured motorist coverage provides benefits for persons injured in an accident where the vehicle responsible for the accident is insured by an insurer determined to be insolvent. Purcell has recovered $50,000.00 from Allstate pursuant to this uninsured motorist coverage due to Reliance's insolvency.

By reason of the insolvency of Reliance, the Maine Insurance Guaranty Association ("MIGA") assumed the defense and handling of Purcell's claim against Mehlhorn. The parties agree that the $50,000.00 Purcell recovered from Allstate is to be applied as an offset, but disagree as to how that offset is to be applied. MIGA maintains that the $50,000.00 Purcell has already recovered must be subtracted from the $50,000.00 per person limit of the Reliance policy. Purcell argues that the $50,000.00 he has already recovered should be subtracted from his $137,059.51 in damages. The sole issue in this case is whether MIGA is obligated to make an additional payment in the amount of $50,000.00 to Purcell on account of Purcell's claim against Mehlhorn for negligence. The parties have agreed that except for Purcell's claim against Mehlhorn for negligence in connection with the accident and any rights Purcell may have against MIGA on account of such claim, all claims, counterclaims, cross-claims and third party claims in this action are dismissed with prejudice.

2

## DISCUSSION

MIGA was established by statute "to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer..." 24-A M.R.S.A. § 4432 (2007). The Legislature has stated that the provisions of the MIGA Act are to be liberally construed in accord with this purpose. 24-A M.R.S.A. § 4434 (2007). The term "covered claims" is defined as "an unpaid claim...arising under and within the coverage and applicable limits of a policy" issued to a Maine resident or for property located within the State of Maine. 24-A M.R.S.A. § 4435(4) (2007). MIGA is "obligated to pay covered claims," but is not obligated to pay a claimant "an amount in excess of the obligation of the insolvent insurer under the policy or coverage from which the claim arises." 24-A M.R.S.A. § 4438(1)(A) (2007). MIGA's potential obligations are capped at the lesser of $300,000.00 or the amount "of the obligation of the insolvent insurer under the policy or coverage from which the claim arises." *Id.*

The MIGA Act places three limitations on MIGA's obligations to pay covered claims, all of which relate to nonduplication of recovery. 24-A M.R.S.A. § 4443 (2007). The first limitation is that a claimant having a claim against a solvent insurer must first exhaust his right under that insurance policy before seeking recovery under the MIGA Act. 24-A M.R.S.A. § 4443(1). The second limitation is that a claimant having a claim that may be recovered under any governmental insurance must exhaust his right under that insurance before seeking recovery from MIGA. 24-A M.R.S.A. § 4443(2). The third limitation is that a claimant having a claim that may be recovered from more than one

3

insurance guaranty association or its equivalent must first seek recovery from the association of the insured's residence before seeking recovery under the MIGA Act. 24-A M.R.S.A. § 4443(3). If one of these limitations applies, the claimant's recovery from MIGA on a covered claim is reduced by the amount of any recovery under the solvent insurer or association. 24-A M.R.S.A. § 4443.

The only limitation relevant to this case is the first, which requires Purcell to seek and exhaust any remedies he may have on his claim for damages from any solvent insurer before seeking recovery from MIGA. There is no question that Purcell did in fact exhaust solvent coverage. In fact, Purcell received the maximum recovery ($50,000.00) that he could have received from Allstate under its uninsured motorist coverage.

Purcell argues that because he has exhausted solvent coverage and yet still has unsatisfied damages, he may proceed against MIGA for the remainder of his unsatisfied damages up to what would have been the policy limit had Reliance not been deemed insolvent (namely, $50,000.00). MIGA argues that the $50,000.00 Purcell received from Allstate pursuant to his uninsured motorist coverage must be offset against the $50,000.00 limit of the insolvent Reliance policy, thus leaving MIGA with no obligation to pay Purcell. This Court agrees with MIGA's position.

The MIGA Act states that "any amount otherwise payable on a covered claim under this subchapter shall be reduced by the amount of any recovery under the insurance policy." 24-A M.R.S.A. § 4443(1). In this case, the amount "otherwise payable" is $50,000.00 because it is the lesser of $300,000.00 or the obligation pursuant to the Reliance policy. Purcell received $50,000.00 from Allstate pursuant to his uninsured motorist coverage; when the $50,000.00

4

"otherwise payable" by MIGA on account of the Reliance policy is reduced by the $50,000.00 Purcell received from Allstate, MIGA is left with no obligation to pay any additional amount to Purcell.

Such an outcome is in accord with the Law Court's decisions interpreting the MIGA Act. For example, in *Pinkham v. Morrill*, the Law Court stated, "Any amount recovered from the uninsured motorist carrier is excepted from the claim against the MIGA" and cited to 24-A M.R.S.A. § 4443(1). *Pinkham v. Morrill*, 622 A.2d 90, 93 (Me. 1993). Similarly, in *Ventulett v. Maine Insurance Guaranty Association*, the Law Court stated, "MIGA's obligation to the claimant is reduced by whatever amount the claimant recovers from any other insurance sources." *Ventulett v. Maine Insurance Guaranty Association*, 583 A.2d 1022, 1024 (Me. 1990).

Contrary to Purcell's argument, there is nothing in the MIGA Act that requires MIGA to make an injured party whole with respect to all of the injured party's damages. Indeed, the express purpose of MIGA is to "provide a mechanism for the payment of *covered claims* under certain insurance policies." 24-A M.R.S.A. § 4432 (emphasis added). As set forth above, the MIGA Act defines a "covered claim" as "an unpaid claim...arising...within the applicable limits of a policy." 24-A M.R.S.A. § 4435(4). In the instant case, Purcell's covered claim is for $50,000.00, the limit of the Reliance policy. As both the MIGA Act and the Law Court make clear, MIGA's obligation to pay a covered claim is to be reduced by the amount the claimant receives pursuant to uninsured motorist coverage.[1]

---

[1] By way of example, the Court notes that if Allstate's uninsured motorist coverage had had a limit of $25,000.00, Purcell could have recovered an additional $25,000.00 from MIGA to arrive at the total $50,000.00 limit of the insolvent Reliance policy. Moreover, Purcell himself admits that this statement of MIGA's obligations is correct: "In its Brief,

The Court also notes that the offsetting of MIGA's obligation by the amount Purcell recovered from Allstate is also the equitable and rational result in this case. Indeed, if Reliance had not been insolvent and instead was liable to pay Purcell, Purcell would have only been able to collect $50,000.00 from Reliance pursuant to the limits of Mehlhorn's policy. However, because Reliance was in fact insolvent, Purcell was able to collect $50,000.00 from Allstate under his uninsured motorist coverage, coverage that would not have been available to Purcell had Reliance been solvent. Purcell is seeking to use Reliance's insolvency to recover twice the insurance benefits he would have been able to recover had Mehlhorn's insurer been solvent. Such a result cannot be permitted.

Therefore, the entry is:

> Judgment for the Intervenor- Defendant Maine Insurance Guaranty Association on the parties' stipulated facts
>
> The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated at Portland, Maine this ___5th___ day of ___November___, 2007.

Robert E. Crowley
Justice, Superior Court

---

MIGA states that 'uninsured motorist coverage is to be offset against MIGA's statutory obligation.' MIGA Brief, p. 8. Plaintiffs do not dispute this fact." Plaintiffs' Reply Brief, page 2.

HOLLY RUSSELL ESQ
PRETI FLAHERTY BELIVEAU PACHIOS & HALEY
PO BOX 9546
PORTLAND ME 04112-9546

PHILIP MANCINI ESQ
DRUMMOND & DRUMMOND
ONE MONUMENT WAY
PORTLAND ME 04101

RONALD LUPTON AAG   -<3 d 𝒫𝓁𝔂
DEPARTMENT OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006

JOHN RICH ESQ        Inter.
PERKINS THOMPSON
PO BOX 426
PORTLAND ME 04112-0426

MARK ROBINS ESQ   -  Inter.
NIXON PEABODY
100 SUMMER ST
BOSTON MA 02110-2131